Gregory TINGUS, Plaintiff,

v.

Margaret HECKLER, Secretary of Health and Human Services, Defendant.

No. CA 81–1265–T.

United States District Court, D. Massachusetts.

Sept. 2, 1983.

William Simon, Legal Services Institute, Jamaica Plain, Mass., Institute for Public Representation, Georgetown Univ. Law Center, Peter Berns, Washington, D.C., for plaintiff.

Patti Saris, Asst. U.S. Atty., Boston, Mass., for defendant.

## OPINION

TAURO, District Judge.

This is an action under the Social Security Act (the "Act"), 42 U.S.C. §§ 401, et seq., to review a final decision of the defendant, Secretary of Health and Human Services (the "Secretary"), denying the plaintiff, Gregory Tingus, disability benefits. Tingus is an illiterate, non-English speaking Greek immigrant, who all parties agree is disabled within the meaning of the Act. While the Secretary concedes that Tingus is disabled, she denied Tingus benefits on the ground that he did not have the requisite "disability insured status" when he filed his application for benefits.

### I. Factual Background.

Tingus immigrated to the United States in 1956. From then until 1972, he worked in various restaurants in the Boston area, and had social security taxes deducted from his paychecks. During this time he had insured status under the Social Security disability system. In 1972, Tingus' health began to deteriorate, and he was hospitalized in 1973. From 1973 to 1978, Tingus was not able to work because of serious hypertension, heart problems, and other ailments. Tingus did not apply for disability benefits during that time because he was unaware that he could. The ALJ in this case, however, found that Tingus was disabled, as defined by the Act during the period 1973–1978.

Despite his physician's advice that he should not exert himself, or attempt to work, Tingus did return to work (without his physician's knowledge) in January, 1978. While he attempted to limit his employment hours, the work eventually proved too much for him, and he collapsed on the job in June, 1979. The ALJ found that Tingus has been disabled since then.

Tingus applied for disability benefits in November, 1979, on the advice of his doctor. Until that time, Tingus was completely unaware that he could apply for benefits. Tingus sought disability payments for the period beginning June, 1979. Benefits were denied on the ground that Tingus did not have insured status.

### II. Statutory Framework.

To have insured status, an applicant must have been "covered" (i.e. working in a job encompassed by the Social Security system) for at least twenty of the forty quarters (quarter year periods) immediately preceding the start of his disability. This is called the "20/40 requirement." The disability for which Tingus applied began in June, 1979. Because Tingus was out of work from 1973 to 1978, and thus not covered during that time, the Secretary found he did not meet the 20/40 requirement.

The Act provides that in determining whether an applicant meets the 20/40 requirement, a prior period of disability shall be excluded. 42 U.S.C. § 423(c)(1)(B)(ii). In Tingus' case, if the years 1973 to 1978, when Tingus was disabled and out of work, are considered a prior period of disability, that period would not count as part of the forty quarters preceding the start of his current disability. Instead, the Secretary would look only to the six quarters from January, 1978, to June, 1979, and 34 quarters prior to 1973. Because Tingus was covered during these 40 quarters, he would easily meet the 20/40 requirement. Tingus argues that his eligibility should be computed in this manner.

The Secretary responds that in order for a prior period of disability to be excluded, it must be an "official" period of disability, i.e. an application for disability must have been filed. Under 42 U.S.C. § 416(i)(2)(E), such an application must be filed within 12 months of the end of the period of disability. Tingus' prior period of disability ended on January, 1978, and his first application for disability benefits was not filed until November, 1979, more than 12 months later. The 12-month deadline, however, may be extended to 36 months if the failure to file within 12 months was attributable to a "physical or mental condition" that rendered the applicant "incapable of executing such an application." 42 U.S.C.

§ 416(i)(2)(F)(i). The question, then, is whether Tingus' inability to speak English, his illiteracy, and his lack of awareness of the existence of benefits, constitutes a "mental condition" that prevented Tingus from meeting the 12-month deadline.

### III. *Discussion.*

■ The Act is, of course, a remedial statute that should be construed liberally "in favor of coverage if such a construction is reasonable." *Broussard v. Weinberger,* 499 F.2d 969, 970 (5th Cir.1974). *See also Doran v. Schweiker,* 681 F.2d 605 (9th Cir. 1982); *Rosenberg v. Richardson,* 538 F.2d 487 (2d Cir.1976). In the present case, there is no dispute that Tingus is disabled, and would have been eligible for benefits. In other words, Tingus is clearly within the class of persons that Congress meant to benefit when it passed the Act.

If Tingus' prior period of disability is not excluded in computing the 20/40 requirement, he is likely to be forever foreclosed from disability benefits. Given his present condition, he is not likely to be able to go back to work so as to accumulate more quarters of coverage. Had Tingus followed his physician's advice and not struggled back to work in January, 1978, he would have been considered continuously disabled from 1973 until the present. In that event, he would have been eligible for benefits, because there would have been no close of the prior period of disability and, therefore, no 12-month application deadline.

Despite these surrounding circumstances, the Secretary chose to utilize a narrow construction of the provisions of the Act, and to deny Tingus benefits. The court believes that the relevant provisions of the Act can reasonably be construed in this case to grant benefits to Tingus. Such a construction will better effectuate the purposes and intent of these provisions and of the Act as a whole.

Under 42 U.S.C. § 416(i)(2)(F)(i), the 12-month application deadline may be extended where the individual's failure to apply within the 12-month period "was attributable to a physical or mental condition of such individual which rendered him incapable of executing such an application." The Secretary's regulations tell applicants that "[y]our failure to apply within the 12-month time period will be considered due to a physical or mental condition if during this time ... (b) you were mentally incompetent." 20 C.F.R. § 404.322 (1982). These provisions are open to a wide range of interpretation. The Act does not define "mental condition," nor do the Secretary's regulations define "mentally incompetent." [1] Nor does the legislative history of this provision give significant help in defining "mental condition." The legislative history does, however, make clear Congress' concern about protecting the eligibility of a "person who is physically or mentally unable to exercise his rights during a significant part of the filing period." S.Rep.No. 744, 90th Congress, 1st Sess., pp. 51–52 (1967), *reprinted in* U.S.Code Cong. & Ad. News, pp. 2885–86.

The ALJ denied Tingus benefits on the ground that there was no evidence "that claimant was 'mentally incompetent' as that term is understood from a legal standpoint ...." Administrative Record, p. 12. The Secretary's brief adopts an even more restrictive reading of the term "mental condition," arguing that an extension should be granted only where a "mental impairment that *causes* disability *also prevents* the claimant from filing a timely application. Secretary's Brief, p. 10. The Secretary's reading is so narrow, however, that if it were adopted, no one would qualify for the extension. The extension provision comes into play only after a claimant's disability has ended, because the 12-month application period does not start running until the dis-

---

1. It is unclear whether the phrase "mentally incompetent" used in the Secretary's regulation is intended to be as wide in scope as the term "mental condition" used in the Act, or whether "mentally incompetent" is used only as an example of what is meant by "mental condition." To the extent there is a discrepancy between the terms "mental condition" and "mentally incompetent," while the Secretary's interpretation is entitled to deference, it must fall if inconsistent with the statutory language or mandate, or the congressional policy underlying the Act. *See NLRB v. Brown,* 380 U.S. 278, 291, 85 S.Ct. 980, 988, 13 L.Ed.2d 839 (1965).

ability period closes. The claimant with a disabling mental impairment has no need for the extension provision. Under the Secretary's reading, though, *only* a claimant with a disabling mental impairment may utilize the extension provision. A statutory amendment clearly intended to provide extra protection for eligibility under a remedial statute cannot possibly be read so narrowly.[2]

■ A reasonable construction of the statute requires that the extension be available to those whose lack of mental capacity causes them to fail to file an application within the 12-month initial period. Tingus falls into this category. As a non-English speaking, illiterate immigrant, he was incapable of knowing or understanding the need to file an application within the 12-month deadline. The Act's extension provision was designed to ameliorate the harshness of the procedural bind that Tingus' incapacity created. Without the extension, Tingus will forfeit benefits to which all agree he is clearly substantively entitled. The circumstances of this case compel application of the extension provision.

For these reasons, Tingus' motion for summary judgment will be granted, and the case remanded for calculation of disability benefits due to Tingus for his period of disability commencing in June, 1979.[3]

---

2. The only case cited to the court that discusses the extension provision at issue here rejected the Secretary's narrow reading. *Grimsley v. Califano,* [Jan. 1980–Sept. 1980] Unemp.Ins. Rep. ¶ 16,852 (N.D.Ga.1979).

3. Tingus' complaint also contended that the denial of benefits violated his constitutional rights, and was an abuse of the Secretary's discretion to waive application deadlines. Because of the court's resolution of the statutory claim, consideration of these other claims is not necessary.

Also, Tingus does not seek benefits for his prior period of disability, but only eligibility for his present disability. The court, therefore, need not decide whether Tingus could use the extension provision to increase his retroactive benefits under the circumstances of this case. *C.f. Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) (Social Security Administration's mistaken advice to a potential claimant that she was not eligible for benefits does not estop the Secretary from limiting retroactive benefits to 12 months from the date of claimant's eventual application).