710 So.2d 95 (1998)
CITY OF PENSACOLA FIREFIGHTERS and Florida League of Cities, Appellants,
v.
James OSWALD, Appellee.
No. 97-1682.
District Court of Appeal of Florida, First District.
April 15, 1998.
*96 Douglas F. Miller and Christopher P. Janes of Clark, Partington, Hart, Larry, Bond, Stackhouse & Stone, Pensacola, for Appellants.
Barry Silber, Pensacola, for Appellee.
BENTON, Judge.
James Oswald's employer, the City of Pensacola Firefighters, and the employer's insurer, the Florida League of Cities, appeal an order awarding Mr. Oswald permanent total disability benefits on account of an industrial accident that occurred on January 26, 1995. We reverse the award for want of substantial competent evidence that Mr. Oswald suffered a permanent impairment "of a nature and severity that would qualify an employee to receive disability income benefits under Title II or supplemental security income benefits under Title XVI of the federal Social Security Act." § 440.02(34)(f), Fla. Stat. (Supp. 1994). On this point, appellants frame their argument as an attack on key fact findings in the order under review, findings which may reflect misunderstanding of a psychiatrist's testimony on deposition. We agree that findings essential to the award of benefits on Mr. Oswald's claim lack record support.

I.
The predicate for permanent total disability benefits is catastrophic injury, which by definition entails permanent impairment. See generally Woodbury v. Southland Corp., 652 So.2d 467, 469 (Fla. 1st DCA 1995)(under prior law, "find[ing] both a zero percent impairment and impos[ing] restrictions" held to be inconsistent); Rodriguez v. Albertson's, 614 So.2d 678, 679 (Fla. 1st DCA 1993)(stating "conclusion that a claimant has reached maximum medical improvement with no permanent impairment is irreconcilable with a conclusion that the claimant has physical restrictions on account of the injury"). *97 Wage loss benefits (on account of permanent partial disabilities) allowed under statutes formerly in force could not be awarded in the absence of some permanent impairment. See Stanley v. Okeelanta Corp., 575 So.2d 734, 735 (Fla. 1st DCA 1991); Griffith v. McDonalds, 526 So.2d 1032, 1033 (Fla. 1st DCA 1988).
The final order does not find that Mr. Oswald has reached maximum medical improvement or assign a permanent impairment rating. Evidence adduced at the merits hearing on March 20, 1997, might have supported a finding that Mr. Oswald had improved physically as much as he was going to. But his psychiatrist's testimony that, when he last saw Mr. Oswald, it was "too soon to tell" whether psychiatric problems "might permanently restrict him to certain types of employment" went unrebutted. The order under review, dated April 9, 1997, did find that "[f]rom March 25, 1995, and continuously thereafter, the claimant has been indemnified by the e/c and paid temporary total disability benefits."
Under the law in effect before January 1, 1994, an award of permanent total disability benefits was generally deemed premature if it preceded maximum medical improvement. See Corral v. McCrory Corp., 228 So.2d 900 (Fla.1969); Anderson & Padgett Sawmill v. Collins, 686 So.2d 795 (Fla. 1st DCA 1997); Department of Offender Rehabilitation v. Godwin, 394 So.2d 1091 (Fla. 1st DCA 1981).
"Date of maximum medical improvement" means the date after which further recovery from, or lasting improvement to, an injury or disease can no longer reasonably be anticipated, based upon reasonable medical probability.
§ 440.02(8), Fla. Stat. (Supp.1994). The City of Pensacola Firefighters and Florida League of Cities argue that, even after the amendments that took effect on January 1, 1994, the Workers' Compensation Law precludes awarding permanent total disability benefits to a claimant who has not attained maximum medical improvement.
We conclude, however, that amendments that took effect on January 1, 1994, chapter 93-415, at 62, Laws of Florida, have given rise to a narrow but necessary exception to the venerable rule that, where a "claimant is not yet at MMI, ... the award of any permanent disability benefits ... [must] be premature." Collins, 686 So.2d at 796. Ordinarily injured employees remain ineligible, until they attain maximum medical improvement, for an award of permanent total disability benefits under Florida's Workers' Compensation Law (even if entitled on account of an industrial accident to receive social security disability income benefits under Title II or supplemental security income benefits under Title XVI of the federal Social Security Act). Because of amendments effective January 1, 1994, an injured worker is no longer entitled to receive temporary benefits for more than two years. Ch. 93-415, § 20, at 120, 128, Laws of Fla., amending section 440.15(2) and (4), Fla. Stat.
Effective January 1, 1994, section 440.15(3)(a)4., Florida Statutes (Supp.1994), not only maintains the requirementnow applicable only when maximum medical improvement occurs more than six weeks before the two-year limit for temporary benefits expiresthat any permanent impairment rating be assigned "[a]fter the employee has been certified by a doctor as having reached maximum medical improvement," but also requiresin the event maximum medical improvement has not occurred earlierthat any permanent impairment be assigned a rating "6 weeks before the expiration of temporary benefits." Ch. 93-415, § 20, at 122, Laws of Fla., amending section 440.15(3)(a)4., Fla. Stat. The definition of "permanent impairment" in section 440.02(19), Florida Statutes, although amended effective January 1, 1994, chapter 93-415, § 2, at 72, Laws of Florida, still requires a determination of the status quo once maximum medical improvement is reached:
any anatomic or functional abnormality or loss determined as a percentage of the body as a whole, existing after the date of maximum medical improvement, which results from the injury.
In assigning a permanent impairment rating because temporary benefits must come to an *98 end, a qualified professional has to anticipate the employee's maximum medical improvement and use professional judgmentfirst to decide whether the employee will be permanently impaired once maximum medical improvement has been attained and, if so, thento assign an impairment rating prospectively.
Although we assume for purposes of decision that Mr. Oswald's claim for permanent total disability benefits became ripe after he had received temporary benefits for ninetyeight weeks, to be eligible for permanent total disability benefits, an employee whose temporary benefits have run outor are expected to do so imminentlymust be able to show not only total disability upon the cessation of temporary benefits but also that total disability will be "existing after the date of maximum medical improvement." § 440.02(19), Fla. Stat. (Supp.1994). We find no such proof in the present case.
By the time of the merits hearing, all but a week of the two years during which Mr. Oswald could receive temporary benefits had run. He was therefore entitled to prove, if he could, that he would be permanently disabled "after the date of maximum medical improvement." We reject appellees' contention that a claimant whose eligibility for temporary benefits is to expire in less than six weeks cannot establish entitlement to permanent total disability benefits by proving that permanent total disability will follow maximum medical improvement, which is expected to occur after temporary benefits must end. Here, however, the requisite permanency was not proven.

II.
Mr. Oswald, who hurt his back at work on January 26, 1995, claims a catastrophic injury entitling him to permanent total disability benefits on the basis of section 440.02(34)(f), Florida Statutes (Supp.1994). The judge of compensation claims concluded that the "gist of the case turns on an interpretation of the deposition testimony of Dr. Iserman," a psychiatrist. Nobody now contends that any current physical impairment, considered apart from psychiatric sequelae, could support an award of permanent total disability benefits. Section 440.02(34), Florida Statutes (Supp.1994), defines a "catastrophic injury" as a
permanent impairment constituted by:
....
(f) Any other injury that would otherwise qualify under this chapter of a nature and severity that would qualify an employee to receive disability income benefits under Title II or supplemental security income benefits under Title XVI of the federal Social Security Act as the Social Security Act existed on July 1, 1992, without regard to any time limitations provided under that act.
"Only claimants with catastrophic injuries are eligible for permanent total benefits." § 440.15(1)(b), Fla. Stat. (Supp.1994). Here the strongest claim is that a pain disorder and other psychiatric problems attributable to the industrial accident result in an impairment "that has lasted or can be expected to last for a period of 12 months," 42 U.S.C. § 423(d), so qualifying Mr. Oswald for federal benefits of the kind described in section 440.02(34), Florida Statutes (Supp.1994).
In his effort to show eligibility for permanent total Florida workers' compensation disability benefitsby demonstrating that he would qualify for specified federal benefits Mr. Oswald called a vocational expert as a witness. Appellants also called a vocational expert. In the order under review, the judge of compensation claims discussed the experts' testimony:
The testimony of the expert vocational witnesses submitted by both parties [is] in total agreement with respect to this case and the issue presented. Both Richard Gilmartin and Martha Lehman, vocational experts for the claimant and the e/c respectively, conclude that if the claimant was not temporarily and totally disabled for a period of twelve months or more from his date of accident through the current time, then he would not be entitled to a finding of disabled pursuant to the Social Security Disability regulations and guidelines. Accordingly, in that instance he would not be entitled to an adjudication of permanent total disability. On the other hand, both vocational experts agree that *99 should the evidence of record show that the claimant has been temporarily and totally disabled for a period of twelve months or more immediately leading up to the trial and final hearing, then he would in fact be entitled to a finding of disabled pursuant to the Social Security Disability regulations and guidelines. In this instance, he would therefor be entitled to an adjudication of permanent total disability pursuant to §§ 440.15(1)(b), and 440.02(34)(f), F.S. (1994). Both the statutory criteria as well as the Social Security Administration's guidelines and regulations governing the determination of disability provide for a finding of disabled once it is established that the claimant's condition has or will meet the durational requirements. This requires a showing that the claimant has been disabled for at least twelve (12) months, or, that he has been disabled for three months and the disability is expected to continue for a cumulative period of twelve months or more. 42 U.S.C. 423; 20 C.F.R. §§ 404.1505; 404.1509; and 404.321. Additionally, the legion of federal appellate decisions establish the foregoing basis for the determination of a finding of disabled. Welch v. Bowen, 854 F.2d 436 (11th Cir.1988); Hillsman v. Bowen, 804 F.2d 1179 (11th Cir.1986); Adams v. Heckler, 742 F.2d 1321 (11th Cir.1984).
(Emphasis supplied.) We agree with appellants' primary contention on appeal, which is that record evidence does not support the order's additional finding that Mr. Oswald had been unable to work for a continuous period of twelve months next preceding the hearing. But we also feel constrained to point out that the parties' retrospective focus is at odds with what the Workers' Compensation Law requires.
No psychiatrist or other witness testified either that Mr. Oswald had reached maximum medical (psychiatric) improvement or that he would be in any way impaired once he did attain maximum medical improvement. The theory on which Mr. Oswald has proceeded obliterates the distinction between temporary total disability benefits and permanent total disability benefits. Indeed, his petition sought permanent total disability benefits beginning on the date of the accident. In his brief, he argues:
Once the claimant has established that he has suffered a condition which has resulted or will result in a period of continuous disability of twelve months or more, he has satisfied both the statutory, as well as the guidelines and regulations criteria for a finding of "disabled" pursuant to the Social Security Act.
But the Social Security Act, 42 U.S.C. § 423(b), does not require a showing that a claimant will suffer any future disability in order to establish entitlement to retroactive federal benefits for "the twelve months prior to filing an application." Tusson v. Bowen, 675 F.Supp. 1032, 1034 (E.D.La.1987). See Tingus v. Heckler, 569 F.Supp. 1499, 1502 n. 3 (D.Mass.1983). Whether or not Mr. Oswald would qualify for federal benefits to which section 440.02(34)(f), Florida Statutes (Supp.1994), makes reference should not, therefore, be dispositive here.
At oral argument, Mr. Oswald's counsel contended that eligibility for disability income benefits under the Social Security Act automatically entitles a workers' compensation claimant to permanent total disability benefits, adopting the following argument:
Realizing that the vast majority of socalled "catastrophic injuries" eligible for PTD benefits would fall under the provisions of § 440.02(34)(f), as opposed to the individual scheduled injuries set forth within §§ 440.02(34)(a)-(e), the Legislature also revised § 440.15(1)(f)2.b, F.S. (1994), which now provides:
The decision [sic] shall provide by rule for the periodic reporting to the employer or carrier of all earnings of any nature and social security income by the injured employee entitled to or claiming benefits for permanent total disability. The employer or carrier is not required to make any payment of benefits for permanent total disability for any period during which the employee willfully fails or refuses to report upon request by the employer or carrier in the manner prescribed by such rules or if any employee who is receiving permanent *100 total disability benefits refuses to apply for or cooperate with the employer or carrier in applying for social security benefits. (emphasis added).
[See Ace Disposal v. Holley, 668 So.2d 645 (Fla. 1st DCA 1996).].
Additionally, the Legislature left intact the provisions of § 440.15(1), F.S. (1994), providing essentially for a dollar for dollar reduction and offset of a claimant's workers' compensation indemnity benefits when the claimant becomes eligible for receipt of Social Security Disability Benefits. The workers' compensation carrier derives the direct benefit of this reduction and offset. § 440.15(10)(a), F.S. (1994).
Unquestionably, the Legislature sought to shift the burden of financing and underwriting the costs of PTD from the employer and carriers of this state to the broader shoulders and deeper coffers of the United States Treasury. This legislative policy and intent can only be implemented and fulfilled by encouraging the maximum number of injured workers to rely on Social Security disability income rather than the state workers' compensation indemnity while they remain disabled. To require as a condition to even enter the system that the injured worker be at overall MMI, a concept totally alien to the Social Security disability system, is improper, and defeats the entire legislative plan.
....
Also, ... the decisions of the federal courts as to the interpretation and application of federal statutes or rights arising thereunder are controlling even when a Florida court is called upon to construe or apply these provisions. Spencer v. State, [389 So.2d 652 (Fla. 1st DCA 1980)]; McCloskey v. Louisville & N.R. Co., [122 So.2d 481 (Fla. 1st DCA 1960)]. For this court to interpret or construe that obtaining MMI is a condition precedent to the entry into the federal Social Security disability system would result in the creation of a body of state court case law which conflicts with the federal court interpretations of this federal statute and its guidelines and their requirements.
We do not conclude "that obtaining MMI is a condition precedent to entry into the federal Social Security disability system." We hold rather that the Workers' Compensation Law authorizes permanent total disability benefits only "[i]n case of total disability adjudged to be permanent." § 440.15(1)(a), Fla. Stat. (1997). That the Workers' Compensation Law provides incentives for permanently totally disabled workers to obtain federal disability income benefits does not speak to whether a worker's disability is properly deemed permanent instead of temporary.
A permanent impairment must be proven in order to support an award of permanent total disability indemnity benefits in Florida. To establish entitlement to such benefits, the Workers' Compensation Law requires that a claimant prove total disability on account of an impairment "existing after the date of maximum medical improvement." § 440.02(19), Fla. Stat. (Supp.1994).
Reversed.
BOOTH, J., concurs.
PADOVANO, J., concurs with written opinion.
PADOVANO, Judge, concurring.
I join in the court's decision and opinion in all respects but write separately to explain why other possible interpretations of the Worker's Compensation Law must be rejected.
The availability of temporary disability benefits is now limited to a period of two years. See section 440.15(2)(a), Florida Statutes (Supp.1994) (temporary total disability); section 440.15(4)(b) Florida Statutes (Supp. 1994) (temporary partial disability). As a practical matter, these statutes eliminate the need to establish maximum medical improvement as a prerequisite to an award of permanent total disability benefits if the claimant is permanently impaired but not yet at maximum medical improvement by the end of the two-year period of temporary benefits. In that event, the claimant is eligible for permanent total disability benefits even though some medical improvement is still to come.
*101 If the court were to apply the general rule that an injured worker must be at maximum medical improvement to be eligible for permanent and total disability benefits, the resulting precedent would create a gap in benefits for any permanently injured worker who has not reached maximum medical improvement by the time the temporary benefits expire. This result was plainly not intended. Section 440.15(2)(a), limits temporary total disability benefits to a period of two years, but further states that:
Once the employee reaches the maximum number of weeks allowed, or the employee reaches the date of maximum medical improvement, whichever occurs earlier, temporary benefits shall cease and the injured worker's permanent impairment shall be determined.(emphasis added)
The implication of this statute is that an injured worker who is permanently impaired will be eligible for permanent disability benefits when the temporary benefits expire.
This conclusion is supported by the following directive in section 440.15(3)(a)4, Florida Statutes (Supp.1994):
After the employee has been certified by a doctor as having reached maximum medical improvement or 6 weeks before the expiration of temporary benefits, whichever occurs earlier, the certifying doctor shall evaluate the condition of the employee and assign an impairment rating, using the impairment schedule referred to in subparagraph 2.
Because the employee is entitled to an impairment rating within six weeks of the end of the temporary benefits, even if the employee has not reached maximum medical improvement by then, we must assume that the employee will be eligible for permanent total disability benefits at the end of the two year period. Any other construction would render the evaluation pointless.
The remaining question is whether section 440.15(3)(a)4 requires an evaluation of the impairment at the time of the medical examination (during the six week period before the temporary benefits expire), or at the time the employee will subsequently reach maximum medical improvement. As the court explains, the answer to this question is that the doctor must evaluate the injured employee to determine the prospective level of impairment when the employee is at maximum medical improvement. The opinion will be subjective, but no more so than other kinds of projections we ask medical experts to make. In any event, the evaluation must be made prospectively to preserve the distinction between temporary and permanent benefits.
If we were to construe section 440.15(3)(a)4 to mean that the doctor must determine the degree of impairment at the time of the medical examination, we would then subvert the two year limit in section 440.15(2)(a) for the payment of temporary benefits. An injured worker may have a high impairment rating at the time of the examination, and yet have a low impairment rating subsequently, at the time of maximum medical improvement. Arguably, one solution would be to award permanent total disability benefits based on the current degree of impairment and then revisit the employee's eligibility under section 440.15(1)(d) when the employee reaches maximum medical improvement. The weakness in this approach is that it treats what may be a mere temporary disability as permanent and extends the payment of benefits beyond the two-year limit.
For these reasons, I conclude that the requirement of maximum medical improvement as a prerequisite to an award of permanent total disability benefits is satisfied by operation of law six weeks before the expiration of temporary disability benefits, and that the directive in section 440.15(3)(a)4 to "evaluate the condition of the employee and assign an impairment rating" requires the doctor to make a prospective evaluation of the impairment that will exist when the employee is at maximum medical improvement.