BENTON, Judge.
Israel Velasquez appeals a final compensation order which ruled that he had “failed to prevail on any of his requests.” On appeal, he contends that the judge of compensation claims erred in not assigning a higher permanent impairment rating, in refusing to order an independent medical (psychiatric) examination, and in denying a motion for continuance of the merits hearing. Finding no error, we affirm.
On July 21, 1995, Mr. Velasquez fell off a roof and fractured two vertebrae. His employer, Malaja Construction, Inc. (Malaja), and Wausau Insurance Company (Wausau), the employer’s carrier, accepted the accident as compensable and provided treatment, including surgery on August 8, 1995, by Dr. Carter, a neurosurgeon, and Dr. Stauber, an orthopedist. Wausau voluntarily paid temporary disability benefits and, based on a permanent impairment rating of eighteen per *304 cent, also paid permanent impairment benefits.
Mr. Velasquez filed petitions for benefits seeking, among other things, additional permanent impairment benefits. Permanent impairment benefits are “computed at the rate of 3 weeks for each percentage point of impairment.” § 440.15(3)(a)3.a., Fla. Stat. (1995). At issue as a factual matter below was the extent of Mr. Velasquez’s permanent impairment stated as a percentage of the body as a whole in accordance with “a uniform permanent impairment rating schedule.” § 440.15(3)(a)2., Fla. Stat. (1995).
Dr. Carter was of the opinion that Mr. Velasquez had attained maximum medical improvement by October 7, 1996, and probably earlier, and that he had a permanent impairment of eighteen per cent. Dr. Stau-ber, the other treating physician, expressed the view that by the time he examined Mr. Velasquez on October 21, 1996, he was at maximum medical improvement with a permanent impairment of twelve per cent.
The highest impairment rating was assigned by Dr. Barrios, the independent medical examiner selected by Malaja and Wausau, who had performed his examination some six months earlier on April 17, 1996. Dr. Barrios thought Mr. Velasquez had already reached maximum medical improvement as of April 17, 1996, and put what he concluded was a permanent impairment at forty per cent.[1] Dr. Lustgarten, the independent medical examiner Mr. Velasquez chose, performed his examination on September 26, 1996, concluded that Mr. Velasquez had reached maximum medical improvement as of that date, and assigned a ten per cent permanent impairment.
As the finder of fact, the judge of compensation claims had to decide which doctor’s testimony to credit. See Kessler v. Community Blood Bank, 621 So.2d 539, 542 (Fla. 1st DCA 1993); S and S Stove Repair, Inc. v. Dumas, 465 So.2d 644, 646 (Fla. 1st DCA 1985); Jefferson Stores, Inc. v. Rosenfeld, 386 So.2d 865, 865-66 (Fla. 1st DCA 1980). After considering the opinions of Drs. Carter, Stauber, Barrios, and Lustgarten, the judge of compensation claims found that Mr. Velasquez had reached maximum medical improvement by October 10,1996,[2] with a permanent impairment of eighteen per cent as a result of the accident.
The statute contemplates a two-step process. The first step is to ascertain the point of maximum medical improvement. The second step is to gauge the extent of impairment existing at the point where “further recovery from, or lasting improvement to, an injury or disease can no longer reasonably be anticipated, based upon reasonable medical probability.” § 440.02(8), Fla. Stat. (1995). Ascertaining the exact date is necessary to determine when permanent indemnity benefits begin, if maximum medical improvement is reached before 104 weeks of temporary disability benefits have been paid. See generally City of Pensacola Firefighters v. Oswald, 710 So.2d 95 (Fla. 1st DCA 1998). In any event, the essential first step is that a qualified professional perceive (or envision, see Oswald, 710 So.2d at 97-98) the injured employee’s medical condition as of the point of maximum medical improvement.
Dr. Barrios’s opinion — the only opinion supporting an impairment rating higher than the rating the judge of compensation claims found — was eliminated from further consid *305 eration at the first step.[3] The order under review recites: “As I have no confidence in the opinions of Dr. Barrios, I specifically reject his thoughts on MMI and his 40% impairment rating.” Dr. Carter testified that Dr. Barrios’s assessment did not take into account the successful surgical intervention. Excluding Dr. Barrios’s opinion — because it did not accurately reflect Mr. Velasquez’s condition at the point of maximum medical improvement — left Dr. Carter’s eighteen per cent rating the “highest ... estimate of permanent impairment ... in evidence.” § 440.1925(5), Fla. Stat. (1995).
Mr. Velasquez also argues for reversal on grounds that his motion to compel an independent medical (psychiatric) examination should have been granted. A judge of compensation claims is authorized to order an employer or carrier to provide an independent medical examination only if there is a “dispute concerning overutilization, medical benefits, compensability, or disability.” § 440.13(5)(a), Fla. Stat. (1995). Because Mr. Velasquez did not prove the existence of any dispute over his entitlement to psychiatric care, the judge of compensation claims properly denied Mr. Velasquez’s motion.
A request for an independent medical evaluation made before evaluation and treatment have been authorized may itself be viewed as a request for medical benefits. Denying such a request may therefore create a dispute of the kind contemplated by section 440.13(5)(a), Florida Statutes (1995). See ABC Liquors, Inc. v. Flores, 700 So.2d 102, 102 (Fla. 1st DCA 1997). Differences over future medical benefits may also arise after medical benefits have been furnished, when one party disagrees with the diagnosis of a treating physician, or of the other party’s independent medical examiner. See Union Camp Corp. v. Hurst, 696 So.2d 873, 875 (Fla. 1st DCA 1997) (stating that it is incumbent upon a claimant who disputes the opinions of physicians furnished by an employer to seek an independent medical examination).
But here Wausau and Malaja never opposed the claim for psychiatric care. Mr. Velasquez mailed a request on February 1, 1996, that a Dr. Lourenco be authorized to provide him psychiatric treatment. The request was received on February 5, 1996. On February 12, 1996, Malaja and Wausau authorized another psychiatrist, Dr. Juan Espinosa, to evaluate Mr. Velasquez and to provide any psychiatric treatment deemed necessary.
Rather than going to Dr. Espinosa (or indicating any objection to seeing Dr. Espi-nosa), Mr. Velasquez reiterated a request for psychiatric care in the petition for benefits he filed on or about June 18, 1996. The petition for benefits simply sought an unspecified “PSYCHIATRIST.” In its response to the petition, Malaja and Wausau recited that Dr. Espinosa had already been authorized and asserted that Mr. Velasquez had made no response to the offer. Nothing further happened until Mr. Velasquez filed his motion to compel an independent medical examination on December 13,1996, still without having seen Dr. Espinosa.
*306 Mere reiteration in the petition of a claim to which Wausau and Malaja had already acceded did not engender a dispute within the meaning of the statute. Promptly after Mr. Velasquez’s first request for psychiatric care, Wausau and Malaja authorized psychiatric care. When Mr. Velasquez reiterated the request for a psychiatrist in his petition for benefits, they informed him that a treating psychiatrist was already authorized. Because Mr. Velasquez failed to establish the existence of a dispute over his entitlement to psychiatric care, the judge of compensation claims ruled correctly that he was not entitled to an independent medical (psychiatric) examination pursuant to section 440.13(5)(a), Florida Statutes (1995).
Finally, Mr. Velasquez contends that the judge of compensation claims abused her discretion in denying his request for a continuance. Only after the denial of his motion to compel an independent medical examination did Mr. Velasquez request that Wausau and Malaja schedule an appointment with Dr. Espinosa. They scheduled an appointment for March 3, 1996, three days before the merits hearing, which they asserted was by then the earliest date Dr. Espinosa had available.
When Mr. Velasquez filed a motion for continuance of the merits hearing, the judge of compensation claims denied it on the ground that Mr. Velasquez had not taken appropriate steps earlier to avail himself of Dr. Espinosa’s services. He had waited almost a year to request that an appointment be scheduled. The judge of compensation claims did not abuse her discretion in denying the motion for continuance on grounds that Mr. Velasquez had failed to act with reasonable diligence to see Dr. Espinosa for evaluation (and, if needed, treatment). See Fla. R. Work. Comp. P. 4.110(a) (1996).
Any error in this regard would, moreover, have been harmless. While the order under review does point out that no evidence was adduced at the merits hearing indicating that Mr. Velasquez needed psychiatric care, the order’s failure to award such benefits also explicitly rests on the fully sufficient alternative ground that Malaja and Wausau had already voluntarily extended the offer of psychiatric treatment.
Affirmed.
BOOTH and PADOVANO, JJ., concur.

. Dr. Barrios's permanent impairment rating of forty per cent is more than double the next highest rating. Dr. Lustgarten testified:
Dr. Barrios, on his April 17, 1996 examination, found significant limitation of motion in nearly all ranges of motion of the spine....
On my examination five months later I find this man has mild to moderate restriction of motion in forward and backward flexion. However, all other ranges of motion were normal. This might very well be a reflection of an additional five months of activity, exercise, et cetera, in that he was improved as far as his range of motion was concerned on September 26, 1996 as compared to April 17, 1996.

. The date of maximum medical improvement found by the judge of compensation claims— which no party complains about on appeal — was not a date assigned by any of the physicians, although it was consistent with the testimony of one of the physicians and reflected the medical condition described by that physician and perhaps others.

. The judge of compensation claims was free to find that Dr. Barrios's permanent impairment rating was based on Mr. Velasquez's condition before he attained maximum medical improvement, and for that reason to disregard altogether Dr. Barrios’s estimate of the extent of permanent impairment. Mr. Velasquez argues that the judge of compensation claims erred because she did not choose either the highest or the lowest estimate of permanent impairment, pursuant to section 440.1925(5), Florida Statutes (1995), which provides:
The judge of compensation claims shall first resolve any dispute concerning the date on which the employee reached maximum medical improvement. The judge shall then determine the degree of the employee's permanent impairment, which shall be either the highest or lowest estimate of permanent impairment which is in evidence before the judge of compensation claims.
Because this argument was never made to the judge of compensation claims, we need not address Mr. Velasquez's contention that section 440.1925(5), Florida Statutes (1995), requires that the judge of compensation claims choose an impairment rating that is either the highest or the lowest rating testified to, even if the weight of the evidence supports neither the highest nor the lowest. We note, however, that while Mr. Velasquez argues that his permanent impairment rating should have been set at forty per cent, which was the highest estimate, instead of at eighteen per cent, his reasoning supports with equal force setting the rating at ten per cent, which was the lowest estimate.