833 So.2d 292 (2002)
RIVENDELL OF FT. WALTON and Gallagher Bassett Services, Inc., Appellants,
v.
Susan PETWAY, Appellee.
No. 1D01-4445.
District Court of Appeal of Florida, First District.
December 30, 2002.
Mary E. Cruickshank and Jacquelyn Lewis Newman, of DuBois & Cruickshank, P.A., Tallahassee, for Appellants.
*293 Barry Silber, Pensacola, for Appellee.
BROWNING, J.
Employer/Carrier appeal a final order awarding permanent total disability (PTD) benefits to the appellee, Susan Petway (Claimant). They contend it was error to award PTD benefits where the uncontradicted medical evidence established that she had not yet reached maximum medical improvement (MMI) from a psychiatric standpoint and that she was likely to improve with psychiatric care and treatment. We affirm the provision of appropriate benefits for Claimant's compensable low back injury and the finding of her entitlement to psychiatric treatment and care under Dr. Doheny's direction. We reverse, as premature, the award of PTD benefits. Metropolitan Title & Guar. Co. v. Muniz, 806 So.2d 637 (Fla. 1st DCA 2002); Chan's Surfside Saloon v. Provost, 764 So.2d 700 (Fla. 1st DCA 2000) (reversing award of PTD benefits absent competent substantial evidence that claimant had reached psychiatric MMI or would remain permanently and totally impaired when she did reach MMI); City of Pensacola Firefighters v. Oswald, 710 So.2d 95 (Fla. 1st DCA 1998).
On October 22, 1995, Claimant worked as a recreational therapist at a residential in-patient psychiatric facility. On that date, she injured her right knee when she sustained a hard fall while playing basketball with adolescent patients. That injury was accepted as compensable. Employer/Carrier paid temporary total disability (TTD) benefits until October 22, 1997, and thereafter paid impairment benefits pursuant to section 440.15(3)(a), Florida Statutes (1995), based on orthopedic surgeon Dr. Macey's 9% permanent partial impairment rating. TTD indemnity benefits were terminated upon the expiration of the 104-week time limit under section 440.15(2)(a), Florida Statutes (1995).
By January 1998, Claimant complained of low back problems, which she contended were related to her October 1995 industrial accident. Employer/Carrier initially provided treatment for the back condition but waited over a year to controvert the compensability of that condition, asserting it was not causally related to her compensable industrial accident. When they elected to provide medical care for Claimant's back complaints, Employer/Carrier did not file the required "pay and investigate" notice under section 440.20(4), Florida Statutes (1995).
In Summer 1998, Claimant hired an attorney to represent her in her claims against Employer/Carrier. At about the same time, Claimant developed symptoms of depression allegedly arising from the industrial accident; she sought a psychiatric evaluation, which Employer/Carrier initially resisted.
On November 12, 1998, Claimant filed a petition with the Division of Workers' Compensation alleging injuries to her knee and back and seeking temporary indemnity benefits; PTD benefits from October 12, 1997, the alleged date of MMI; authorization of an alternate orthopedic surgeon to treat her knee; authorization of a neurosurgeon; authorization of a pain management specialist; and authorization of a psychiatrist to evaluate and, if necessary, treat her. The petition clearly indicated Claimant was seeking benefits based on both a right knee injury and a back injury. Her January 4, 1999, amended petition requested the same benefits. Employer/Carrier filed a February 11, 1999, notice of denial stating that independent medical examinations (IMEs) had been set with Drs. Doheny and Benson.
Dr. Benson, a board-certified psychiatrist, was deposed on December 1, 1999. *294 Dr. Benson testified that he had performed an IME of Claimant on March 25, 1999, at Employer/Carrier's request. The doctor's impression was that Claimant had experienced a substantial deterioration in her mood and had a pattern of symptoms consistent with a diagnosis of major depression. He recommended treatment with anti-depressant medication and cognitive behavioral therapy, approximately 16-20 visits. Dr. Benson opined that Claimant was not at MMI from a psychiatric perspective. He testified that if the recommended treatment plan were implemented, Claimant likely would have a full, complete recovery from her psychiatric symptoms. He expected Claimant to be able to return to work once she began responding to psychiatric medication. Dr. Benson opined that Claimant's back problem is the major contributing pain component of her developing depression.
Claimant's counsel deposed Dr. Doheny, a board-certified psychiatrist, on December 9, 1999. The doctor testified he had interviewed Claimant and performed an IME on her on March 11, 1999. He opined that the industrial accident, and specifically the knee problem, was the major contributing cause of the diagnoses of a pain disorder and major depression. The doctor recommended that Claimant address her psychiatric problems with anti-depressant and anti-anxiety medications, along with individual therapy. Dr. Doheny opined that Claimant would have been unable to work from the date of her accident until he evaluated her. The doctor testified that it would be difficult to address MMI until psychiatric intervention was attempted. However, he speculated that if no psychiatric treatment or care were ever provided to Claimant, she would have been at psychiatric MMI when he performed the IME. Although Dr. Doheny testified that Claimant's psychiatric condition would meet the criteria for disability under section 12.04 of the "Listing of Impairments" under Social Security Disability Guidelines, he explained that he was basing this opinion primarily upon Claimant's subjective complaints. The doctor acknowledged that with appropriate psychiatric treatment, some of Claimant's depressive symptoms, difficulties, and symptoms, which are set forth in section 12.04(a) and (b) of the Guidelines, could be improved or eliminated.
Employer/Carrier authorized psychiatrist Dr. Iserman. Eventually, at the merits hearing, Claimant testified that she had dealt with Dr. Iserman previously in a professional capacity and had personal objections to his care and treatment. She contended that this uncomfortable situation was tantamount to a denial of her request for psychiatric treatment and care.
The judge of compensation claims (JCC) issued a May 5, 2000, order finding that Claimant's back injury was unrelated to her industrial accident and not compensable. The JCC granted Employer/Carrier's motion for appointment of an expert medical advisor (EMA) under section 440.13(9), Florida Statutes (1995). The JCC found a conflict in the testimony of Drs. Doheny and Benson regarding Claimant's level of disability, if any, and whether Claimant ultimately would have a permanent psychiatric impairment, which would render her eligible for PTD benefits. The JCC retained jurisdiction to determine later whether Claimant was entitled to psychiatric care or PTD benefits.
A board-certified psychiatrist, Dr. Szmurlo, was appointed EMA regarding Claimant's psychiatric condition. He evaluated Claimant three times between July 24 and September 8, 2000, and issued an evaluation report. He diagnosed Claimant as suffering from major depression and pain disorder; he opined that she would *295 benefit from psychotherapy and treatment with medications. The EMA opined that the major contributing cause of the development of major depression and pain disorder was the knee condition arising from the industrial accident. He opined further that Claimant's psychiatric condition met or equaled the section 12.04 criteria listing impairments under the Guidelines. He opined that absent the provision of psychiatric care, Claimant would be at MMI, would have a permanent partial impairment rating, and would be totally precluded from future work. He testified that from a medical/psychiatric standpoint, Claimant was not at MMI. The EMA felt it would be premature to assign any impairment rating for her psychiatric condition. In that regard, he expected Claimant's condition to improve with proper treatment. Although Dr. Szmurlo believed that Claimant was unable to work when he saw her, he opined that Claimant's work restrictions might be lessened once psychiatric treatment was initiated. He opined it would be difficult for him to determine whether Claimant would still meet the section 12.04 disability guidelines if treatment were provided and her condition improved, as he expected it would.
In the October 11, 2001, order, the JCC found that Claimant has reached statutory MMI, that her psychiatric injury is permanent, and that she is entitled to PTD benefits. Her condition was found to satisfy the section 12.04 impairment listings. Claimant was awarded attorney's fees under section 440.34(c), Florida Statutes (1995). Claimant moved for rehearing or clarification regarding the compensability of her back condition. Her amended motion alleged the JCC had failed to make a dispositive ruling on the issue of authorized psychiatric care and treatment at Employer/Carrier's expense.
In the October 30, 2001, order on rehearing, the JCC found that Employer/Carrier's denial of the compensability of Claimant's low back injury and condition was untimely, so that Employer/Carrier are estopped from denying the compensability thereof. § 440.20(4), Fla. Stat. (1995). The JCC noted that the referral for a psychiatric EMA arose from the discrepancy between the medical opinions of Claimant's and Employer/Carrier's respective psychiatric IMEs. The JCC accepted EMA Dr. Szmurlo's opinions to support the finding that Claimant's psychiatric condition is compensable. Employer/Carrier were ordered to provide authorized psychiatric care and treatment at Dr. Doheny's direction, as the nature of Claimant's condition and the process of her recovery require. The estoppel of Employer/Carrier from denying the compensability of the low back condition was found to have mooted the issue of major contributing cause concerning the psychiatric condition.
On appeal, Employer/Carrier argue, first, that the JCC reversibly erred in awarding PTD benefits where the uncontradicted medical evidence established that Claimant had not reached MMI from a psychiatric standpoint and was likely to improve with psychiatric treatment. Second, Employer/Carrier contend the JCC erred by waiting 19 months after Claimant's live testimony to enter the final order. The issue of the staleness of the order was not raised below and, thus, was not preserved for appellate review. In any event, our reversal based on the first issue moots the second issue.
Claimant asserts that Employer/Carrier failed to provide requested psychiatric care and treatment. In their timely notice of denial, Employer/Carrier stated they had set IMEs with Drs. Doheny and Benson. Although it is unclear from the record on appeal exactly when Dr. Iserman was authorized to provide psychiatric care *296 and treatment related to Claimant's knee injury, counsel for Employer/Carrier stated at the December 14, 1999, hearing that Dr. Iserman had never been de-authorized. Claimant testified that she had known Dr. Iserman professionally during her employment as a recreational therapist and that she had personal objections to his treating her. Claimant has not cited anything in the record indicating that she had previously communicated to Employer/Carrier her disenchantment with Dr. Iserman and had requested a different psychiatrist. Thus, the record supports Employer/Carrier's contentions that they authorized and provided psychiatric treatment and care, of which Claimant failed to avail herself, and that the uncontradicted medical evidence indicates Claimant's psychiatric condition likely would improve in response to treatment and care. Likewise, competent substantial evidence in the record supports the JCC's ruling that Claimant is entitled to psychiatric care and treatment under Dr. Doheny's direction.
The issue on appeal is entitlement to PTD benefits. Despite certain amendments to Chapter 440, Florida Statutes, see chapter 93-415, at 62, Laws of Florida, effective in 1994, the general rule is still that a determination of MMI must precede an award of PTD benefits. City of Pensacola Firefighters, 710 So.2d at 95, 96-97. The amendments created a narrow exception to this rule where, six weeks before the termination of temporary benefits has expired under the 104-week rule, a qualified professional is able to determine that the claimant will be permanently impaired once MMI is attained and, if so, to assign a prospective impairment rating. Id. at 97-98. In Emanuel v. David Piercy Plumbing, 765 So.2d 761 (Fla. 1st DCA 2000), this court stated that a claimant can be considered at "statutory" MMI and, thus, entitled to permanent benefits for continuing disability "once a claimant's medical condition has improved as much as is reasonably expected under available and recommended remedial treatments." Id. at 762. This represents another means of establishing MMI, aside from the more obvious one where a qualified professional opines that a claimant has reached "medical" MMI. Because Claimant has not yet submitted to the available, remedial authorized psychiatric treatment and care, a finding of entitlement to PTD is premature.
Given the unrefuted medical evidence indicating a reasonable likelihood of psychiatric improvement if Claimant receives psychiatric treatment and care, and the record evidence showing that Employer/Carrier authorized and provided a psychiatrist, we conclude that Claimant has failed to meet her burden, as established in Oswald and Emanuel, to show that she has reached psychiatric MMI. That is, any determination that Claimant is entitled to PTD benefits nowbefore the effects of psychiatric treatment and care are knownis premature. Chan's Surfside Saloon v. Provost, 764 So.2d at 700. Under the instant facts, a determination on the MMI question must precede a determination of entitlement to psychiatric PTD benefits. Metropolitan Title & Guar. Co. v. Muniz, 806 So.2d at 637; Daws Mfg. Co., Inc. v. Ostoyic, 756 So.2d 175, 176 (Fla. 1st DCA 2000).
Accordingly, we AFFIRM the provision of benefits for Claimant's compensable low back injury; and the authorization of psychiatric treatment and care under Dr. Doheny's supervision, as the nature of that condition and the process of recovery require; and we REVERSE the premature award of PTD benefits.
LEWIS and POLSTON, JJ., concur.