930 So.2d 789 (2006)
Elizabeth OLMO, Appellant,
v.
REHABCARE STARMED/SRS, Appellees.
No. 1D05-4393.
District Court of Appeal of Florida, First District.
May 31, 2006.
*790 Donald J. Magee, Esquire of the Law Offices of Attridge, Cohen & Lucas, P.A., New Port Richey, for Appellant.
A. Dawn Hayes, Esquire of A. Dawn Hayes & Associates, P.A., Tampa, for Appellees.
BENTON, J.
Elizabeth Olmo appeals the denial of her petition for permanent total workers' compensation disability benefits. We agree with her contention that her claim for such benefits was not res judicata, reverse the order dismissing her claim on that basis, and remand for determination of the claim on the merits.

I.
The order under review addresses the interplay between two important principles. The first, designed to discourage "piecemeal litigation," has been stated this way: "A workers' compensation claimant *791 is barred by the doctrine of res judicata from raising a claim that he was entitled to a benefit, where he could have but failed to litigate the issue of his right to that benefit in prior proceedings." Scotty's Hardware, Inc. v. Northcutt, 883 So.2d 859, 860-61 (Fla. 1st DCA 2004). The second, designed to avoid decisions about a claimant's "permanent" status before the picture is clear, was recently stated this way:
[W]e have consistently held that a claim for impairment or permanent disability benefits made before a claimant has reached MMI[[1]] or received 98 weeks of temporary benefits is premature. See, e.g., G. Pierce Woods Mem'l Hosp. v. Lewis, 879 So.2d 643, 644 (Fla. 1st DCA 2004) (finding claim for PTD premature absent a showing of MMI or applicable "exception to the MMI requirement"); Metro. Title & Guar. Co. v. Muniz, 806 So.2d 637, 637 (Fla. 1st DCA 2002) ("Until an impairment rating is assigned, based on the claimant's present or expected date of maximum medical improvement, he is not entitled to permanent disability benefits."); Okeechobee Health Care v. Collins, 726 So.2d 775, 777 n. [4] (Fla. 1st DCA 1998) ("Until maximum medical improvement or until the expiration of all temporary benefits is imminent, assigning [an impairment] rating serves no purpose under the statute.").
Cooper v. Buddy Freddy's Rest., 889 So.2d 125, 126 (Fla. 1st DCA 2004). Here, Ms. Olmo sought authorization for back surgery by filing a petition after her entitlement to temporary disability benefits had expired. Because she did not simultaneously request and litigate entitlement to permanent total disability benefits, the judge of compensation claims later ruled she could not raise the claim separately. Explaining this ruling, the order under review states that "a claim for [permanent total disability benefits] might have been found to have been premature at the previous hearing; however, there was no impediment to bringing it then."

II.
Ms. Olmo was at work for Rehabcare Starmed (Rehabcare) as a certified nurse's assistant on May 29, 2001, when she injured her back while assisting a patient. As a consequence, Rehabcare and its insurance carrier, Specialty Risk Services, Inc. (SRS), began paying temporary disability benefits, after which they paid approximately six months of permanent impairment benefits. Rehabcare and SRS authorized care by several doctors, including Paul Zak, an orthopedic surgeon. In April of 2002, Dr. Zak recommended a lumbar discectomy and fusion at the L5-S1 level, but Rehabcare and SRS refused to authorize the surgery.
When Ms. Olmo filed a petition for benefits in February of 2004, requesting "temporary total or temporary partial disability (TTD/TPD) benefits from August 19, 2003, an [independent medical examination] and authorization of the surgery recommended by Dr. Zak," Rehabcare and SRS responded that 104 weeks of temporary benefits had already been paid, that an independent medical examination was being scheduled, and that surgery would not be authorized because they attributed the need for surgery to the claimant's preexisting condition, not to her industrial accident. By the time of the hearing on December 7, 2004, the only issue remaining to be tried *792 was whether the back surgery Dr. Zak had recommended would be authorized. On December 14, 2004, the judge of compensation claims ruled against Rehabcare and SRS on this issue, requiring them to authorize the back surgery. Dr. Zak performed the surgery on June 13, 2005.
Meanwhile, on February 20, 2005, after her surgery had been authorized but before the surgery took place, Ms. Olmo filed another petition for benefits (the second petition), seeking permanent total disability benefits from June 1, 2003, and continuing. By this time, she was no longer eligible for any temporary indemnity benefits: She had been paid temporary total disability benefits from the date of her accident until 104 weeks expired on May 30, 2003; and permanent impairment benefits from June 1, 2003 until December 1, 2003.
When the second petition came on for hearing on August 5, 2005, the parties stipulated that Ms. Olmo had not by then reached maximum medical improvement; but that, when she did reach maximum medical improvement, she would have a permanent impairment. Rehabcare and SRS argued, however, that the claim for permanent total disability benefits was barred by the doctrine of res judicata because Ms. Olmo had not made the claim at or before the hearing to determine whether back surgery would be authorized. The judge of compensation claims eventually accepted this contention, rejecting Ms. Olmo's counter argument that the claim was not ripe on December 7, 2004, when that hearing took place, because she did not then know if surgery would be authorized or, if so, whether it would leave her permanently totally disabled. But before ruling against her on the basis of res judicata, the judge of compensation claims afforded Ms. Olmo an opportunity to make an evidentiary showing of entitlement to permanent total disability benefits.

III.
Once a workers' compensation claim has been litigated and decided, the determination stands, absent "a change in condition or . . . a mistake in a determination of fact[.]" § 440.28, Fla. Stat. (2001). See Starkman v. Bechtel Power Corp., 588 So.2d 304, 305 (Fla. 1st DCA 1991) (refusing to consider whether a judge of compensation claims had applied an incorrect legal standard in originally deciding the case because "claimant had not undergone a substantial change of condition"). Even a claim the parties have never litigated and the judge of compensation claims has never considered can be foreclosed:
If a merits hearing occurs and mature claims are not litigated, the claims are considered waived, and later litigation is precluded by application of the doctrine of res judicata. E.g., Artigas v. Winn Dixie Stores, Inc., 622 So.2d 1346 (Fla. 1st DCA 1993); Department of Transportation v. Greene, 599 So.2d 1368 (Fla. 1st DCA 1992); Florida Power & Light Co. v. Haycraft, 421 So.2d 674 (Fla. 1st DCA 1982).
Boynton Landscape v. Dickinson, 752 So.2d 1236, 1237 (Fla. 1st DCA 2000). "The piecemeal litigation of claims after maturity is not permitted. Hunt v. International Minerals and Chemical Corp., 410 So.2d 640 (Fla. 1st DCA 1982)." Fla. Power & Light Co. v. Haycraft, 421 So.2d 674, 675 (Fla. 1st DCA 1982). "Claims for compensation benefits should be determined at a hearing if they are mature and only the determination of immature claims should be postponed. . . ." Id. Where a ripe claim is held in reserve instead of being pursued along with another claim litigated in the same case, the reserved claim cannot be litigated later separately.

*793 IV.
On the other hand, a claim for permanent total disability benefits cannot succeed if the claim is not yet ripe for consideration. See Brantley v. Allen, 538 So.2d 1338, 1339 (Fla. 1st DCA 1989) (explaining "immature claims should be postponed until they are ripe for hearing"). Before January 1, 1994, no claim for permanent total disability benefits was ripe for adjudication until the claimant reached maximum medical improvement, "the date after which further recovery from, or lasting improvement to, an injury or disease can no longer reasonably be anticipated, based upon reasonable medical probability." City of Pensacola Firefighters v. Oswald, 710 So.2d 95, 97 (Fla. 1st DCA 1998) (quotation omitted). See also § 440.15(2)-(3), Fla. Stat. (1993) (allowing temporary benefits for up to 260 weeks, and precluding permanent benefits before the date of maximum medical improvement).
Amendments to the Workers' Compensation Act effective January 1, 1994, limit temporary benefits to 104 weeks, see Okeechobee Health Care v. Collins, 726 So.2d 775, 776-77 (Fla. 1st DCA 1998), but provide that a permanently injured claimant can begin receiving permanent impairment benefits upon the expiration of 104 weeks, even if maximum medical improvement has not been attained. See Ch. 93-415, § 20, at 120, 128, Laws of Fla. (amending § 440.15(2), (4), Fla. Stat. (1993)). Unless the date of maximum medical improvement has already been reached, the injured employee's condition is to be evaluated six weeks before temporary benefits expire, so that an impairment rating can be assigned. See § 440.15(3)(a)(4.), Fla. Stat. (2001). "Once the employee reaches the maximum number of weeks allowed, or the employee reaches the date of maximum medical improvement, whichever occurs earlier, temporary disability benefits shall cease and the injured worker's permanent impairment shall be determined." § 440.15(2)(a), Fla. Stat. (2001). The amended statute contemplates an award of permanent impairment benefits once temporary disability benefits cease, even if maximum medical improvement has not been attained by then, but the amendments do not specify when a claim for permanent total disability benefits ripens.
Addressing this question in Oswald, we held that an injured employee could, under the amendments effective January 1, 1994, claim permanent total disability benefits even before reaching maximum medical improvement. 710 So.2d at 98. We "assume[d] for purposes of decision" that the claim Mr. Oswald asserted had become ripe and could be litigated[2] after he had received temporary benefits for ninety-eight weeks, holding that he had the burden to "show not only total disability upon the cessation of temporary benefits but also that total disability will be `existing after the date of maximum medical improvement.'" Id. (quoting § 440.02(19), Fla. Stat. (Supp. 1994)). Where a claimant has not reached maximum medical improvement, however, and has no evidence that she will be totally disabled when she does reach maximum medical improvement, any claim for permanent total disability benefits is premature. See Rivendell of Ft. Walton v. Petway, 833 So.2d 292, 296 (Fla. 1st DCA 2002) ("[A]ny determination that Claimant is entitled to [permanent total disability] benefits nowbefore the effects of . . . treatment and care are knownis premature.").

*794 V.
In the present case, the judge of compensation claims found that Ms. Olmo "might" have been able to claim permanent total disability benefits at or prior to the hearing on December 7, 2004, even though she did not, in fact, do so. No claim for permanent total disability benefits was actually litigated in December of 2004, and no reason was shown why Ms. Olmo was under any obligation to litigate a claim for permanent total disability benefits at that time. The parties stipulated that she had not yet reached maximum medical improvement in December of 2004 (or even by the time of the second hearing in August of 2005). The reason she sought the authorization for surgery at issue at the December 2004 hearing was to avoid or alleviate any permanent disability.
It was, therefore, error for the judge of compensation claims to bar the claim for permanent total disability benefits Ms. Olmo stated in her second petition. A claimant who has yet to attain maximum medical improvement is not required to file a claim for permanent total disability benefits before she is in a position to "show not only total disability upon the cessation of temporary benefits but also that total disability [would] be `existing after the date of maximum medical improvement.'" Oswald, 710 So.2d at 98. The claimant and her physicians are in the best position to know whether circumstances permit a prospective determination as to when she will be at maximum medical improvement and whether any then-existing impairment will be permanent and total.
In short, although she might have elected to do soif she had been persuaded she could prove she was fated to be permanently totally disabled at maximum medical improvementMs. Olmo was not required to claim permanent total disability benefits at or before the hearing held in December of 2004. The judge of compensation claims erred in ruling that the claim for permanent total disability benefits later alleged in her second petition was res judicata. See Holder v. Keller Kitchen Cabinets, 610 So.2d 1264, 1267 (Fla.1992); Interim Pers. v. Hollis, 715 So.2d 355, 356 (Fla. 1st DCA 1998); Advanced Employment Concepts/AIG Claim Servs., Inc. v. Resmondo, 718 So.2d 215, 215 (Fla. 1st DCA 1998). Her claim for permanent total disability benefits should be decided on the merits.
Reversed and remanded.
KAHN, C.J. and WOLF, J., concur.
NOTES
[1] MMI denotes maximum medical improvement. "`Date of maximum medical improvement' means the date after which further recovery from, or lasting improvement to, an injury or disease can no longer reasonably be anticipated, based upon reasonable medical probability." § 440.02(9), Fla. Stat. (2001).
[2] Ultimately, the Oswald court found that the claimant failed to prove entitlement to permanent total disability benefits because he did not show that he would be totally disabled once he reached maximum medical improvement. 710 So.2d at 98.