PER CURIAM.
 

 The Employer/Carrier raises three issues in this workers’ compensation appeal, challenging awards of medical care based on a finding that Claimant’s lumbar condition is compensable, temporary partial disability (TPD) benefits, and permanent total disability (PTD) benefits. The issues raised with respect to the award of TPD benefits and the finding of compensability are without merit. Accordingly, we affirm the award of TPD benefits, the finding of compensability of the lumbar condition, and the award of medical benefits without further comment.
 

 We write only to address the award of PTD benefits. The Judge of Compensation Claims (JCC) awarded PTD benefits beginning the day after Claimant’s entitlement to temporary disability benefits ended. We reverse because Claimant, whom the JCC found had not reached maximum medical improvement (MMI) when entitlement to temporary disability benefits ended, failed to present evidence from which the JCC could conclude that he will be totally disabled when he reaches MMI.
 

 Facts
 

 Claimant was injured in a compensable motor vehicle accident on May 22, 2007,
 
 *635
 
 sustaining injuries to his shoulders, a rib, and a thoracic vertebra. The Employer/Carrier provided treatment for these conditions, but denied compensability of a herniated lumbar disc. Claimant had one surgery on the left shoulder and two rota-tor cuff repairs on the right shoulder. Following those surgeries, the physician treating Claimant’s shoulder injuries, Dr. Van Winkle, placed Claimant at MMI for both shoulders on March 17, 2009, assigning a combined twenty-one percent whole body impairment.
 
 [1]
 
 The right shoulder failed to heal, however, and on April 1, 2009, Dr. Van Winkle recommended that Claimant consult with another doctor, Dr. Frankie, for possible right shoulder replacement surgery. Although Dr. Van Winkle initially testified that she did not rescind the March 17, 2009, MMI date, and that the MMI date would only be revised after shoulder replacement surgery, she later testified that Claimant was not at MMI if he elected to have shoulder replacement surgery. She also testified that Claimant was not currently capable of working if he elected to have the shoulder replacement surgery.
 

 Dr. Frankie recommended shoulder replacement at a surgical consultation on June 5, 2009. He expressed no opinion as to MMI or Claimant’s restrictions while Claimant considered his options, but he testified that if Claimant elected to have surgery it would take approximately one year after surgery for Claimant to reach MMI. Dr. Frankie also testified that, once Claimant reached MMI post-surgery, he would probably have an eighteen percent whole body permanent impairment attributable to the right shoulder. Claimant deferred a decision on the shoulder replacement until November 3, 2009, when he decided to have the surgery.
 

 As to the controverted low back injury, Dr. Hayes, Claimant’s independent medical examiner, opined that the industrial accident caused Claimant’s low back symp-tomatology. He also testified that Claimant was not at MMI for the low back injury and that Claimant had been unable to work since his examination of Claimant on September 4, 2009.
 

 At a final hearing on November 24, 2009, Claimant sought the following benefits, among others: TPD benefits from March 10, 2009; PTD benefits from May 9, 2009; and a determination of compensa-bility of his low back condition. In the final order, the JCC accepted the opinions of Dr. Hayes as to Claimant’s lumbar condition. He then found the Employer/Carrier had erroneously reclassified benefits to impairment benefits effective March 11, 2009, because Claimant remained TPD until May 22, 2009, when 104 weeks of temporary disability benefits were paid. He found further that Claimant was entitled to PTD benefits beginning May 23, 2009.
 

 In awarding PTD benefits, the JCC accepted the testimony of Claimant’s vocational expert that Claimant did not currently retain a capacity for the full range of light or sedentary work. He also found there were no jobs within a fifty-mile radius of Claimant’s residence that Claimant is currently physically capable of engaging in, given his temporary total disability status, pending surgery, and unresolved lumbar pathology. Moreover, the JCC found Claimant has a permanent impairment and will continue to have a permanent impairment for his shoulder injury following shoulder replacement surgery, and that
 
 *636
 
 Claimant’s lumbar disc herniation would qualify for a permanent impairment rating. The JCC found, however, that Claimant did not reach overall MMI in March 2009 and had not reached MMI for the low back injury.
 

 PTD before MMI
 

 For accidents occurring on or after January 1, 1994, temporary disability benefits are limited to a period of 104 weeks. Ch. 93-415, § 20, at 120, 128, Laws of Fla. (amending § 440.15(2), (4), Fla. Stat.). We explained in
 
 City of Pensacola Firefighters v. Oswald,
 
 710 So.2d 95 (Fla. 1st DCA 1998), that a claimant who has exhausted entitlement to temporary disability benefits, but who has not yet reached MMI, may receive PTD benefits when he or she can prove present total disability and total disability existing after the date of MMI.
 
 Id.
 
 at 98. The date of MMI is statutorily defined as “the date after which further recovery from, or lasting improvement to, an injury or disease can no longer reasonably be anticipated, based upon reasonable medical probability” § 440.02(10), Fla. Stat. (2006). If a claimant who has not reached MMI presents no evidence that he or she will be totally disabled when MMI is reached, any claim for PTD benefits is premature.
 
 Olmo v. Rehabcare Starmed/SRS,
 
 930 So.2d 789, 793 (Fla. 1st DCA 2006);
 
 see also Rivendell of Ft. Walton v. Petway,
 
 833 So.2d 292, 296 (Fla. 1st DCA 2002) (“[A]ny determination that Claimant is entitled to PTD benefits now-before the effects of ... treatment and care are known-is premature”).
 

 Here, the JCC considered the combined effects of Claimant’s compensa-ble conditions in determining entitlement to PTD benefits, but he did not address, as required by
 
 Oswald,
 
 whether total
 
 disability
 
 will exist after the date of MMI. Nevertheless, this oversight is understandable because Claimant did not present proof that he will be totally disabled after reaching MMI for the right shoulder and low back conditions. Instead, Claimant argued that PTD status should be determined based on his condition as it existed at the expiration of temporary disability benefit eligibility, regardless of whether he has reached MMI.
 
 [2]
 
 The test, however, for PTD entitlement prior to the date of MMI is not, as the JCC appears to have concluded, whether a claimant is totally disabled upon the expiration of temporary disability benefit eligibility, and will have a permanent impairment after reaching MMI. The test is whether a claimant is totally disabled upon the expiration of temporary benefit eligibility, and will remain totally disabled after the date of MMI as that phrase is statutorily defined. § 440.02(10). “Permanent impairment” and “disability” are not synonymous. Permanent impairment is defined as “any anatomic or functional abnormality or loss determined as a percentage of the body as a whole, existing after the date of maximum medical improvement, which results from the injury.” § 440.02(22), Fla. Stat. (2006). Disability is defined as “incapacity because of the injury to earn in the same or any other employment the wages which the employee was receiving at the time of the injury.” § 440.02(13), Fla. Stat. (2006).
 

 Claimant cites
 
 Emanuel v. David Piercy Plumbing,
 
 765 So.2d 761 (Fla. 1st DCA 2000), for the proposition that, when a claimant seeks PTD benefits after receiving 104 weeks of temporary disability benefits, PTD entitlement is properly determined without regard to a claimant’s disability status upon achieving MMI. Claimant misreads
 
 Emanuel. Emanuel
 
 
 *637
 
 involved a claimant who had a single injury, had reached MMI, and surgery was recommended over one year later.
 
 Id.
 
 at 762. The claimant’s PTD entitlement in
 
 Emanuel
 
 was based on the claimant’s post-MMI status.
 
 Id.
 
 Accordingly,
 
 Emanuel
 
 does not support Claimant’s proposition.
 
 See also Fla. Transp. 1982, Inc. v. Quintana,
 
 1 So.Bd 388, 391 (Fla. 1st DCA 2009) (explaining PTD entitlement in
 
 Emanuel
 
 was based on claimant’s status post-MMI). Here, because Claimant failed to prove total disability existing after the date of overall MMI, the JCC erred in awarding PTD benefits. As a result, the award of PTD benefits from May 23, 2009, must be reversed as premature.
 
 [3]
 

 For these reasons, the award of TPD benefits, the finding of compensability of the low back injury, and the award of medical benefits are AFFIRMED. The award of PTD benefits is REVERSED.
 

 KAHN, LEWIS, and CLARK, JJ., concur.
 

 [1]
 

 . That Claimant reached MMI for the thoracic vertebral injury and rib injury does not appear to have been in dispute, as it was not addressed by the parties or the JCC. Medical testimony and records introduced below indicate the rib injury healed and that, by July 27, 2007, Claimant had reached MMI for the thoracic vertebral injury.
 

 [2]
 

 .
 
 Claimant also did not present proof that he was totally disabled based solely on the thoracic vertebral injury and the rib injury, for which he appeared to have reached MMI.
 

 [3]
 

 . We recognize the applicable statutes may create a gap in disability benefits for those injured workers who are totally disabled upon the expiration of temporary disability benefits but fail to prove prospectively that total disability will exist after the date of MMI. The wisdom of this policy is a question for the Legislature.