EN BANC
WETHERELL, J.
In this workers’ compensation case, the Employer and Carrier (E/C) appeal a final order awarding Shawn Hadley (Claimant) permanent total disability (PTD) benefits. The E/C argue that the Judge of Compensation Claims (JCC) erred in awarding PTD benefits because Claimant has not yet reached maximum medical improvement (MMI) and he did not prove that he would be permanently and totally disabled after reaching MMI. We agree with the E/C and conclude this case is controlled by our decision in City of Pensacola Firefighters v. Oswald, 710 So.2d 95 (Fla. 1st DCA 1998), and its progeny. Upon consideration of this case en banc,[1] we decline to depart from that settled precedent. Accordingly, we reverse the order on appeal.
I. FACTUAL BACKGROUND
On January 18, 2007, Claimant injured his left knee and leg in a compensable *623 accident. Claimant underwent a number of surgeries on the leg as a result of complications from the initial surgery. Claimant’s authorized treating physician, Dr. Farid Hakim, anticipates that Claimant will need additional surgeries, and he testified that Claimant is not yet at MMI. In May 2009, Claimant was placed on a no-work status pending the additional surgeries. Dr. Hakim was unable to provide a definitive opinion of Claimant’s disability status once he reaches MMI, although he did testify that Claimant will “most probably” be able to go back to at least light-duty work at some point in the future and that Claimant will “probably” have only a 10% to 15% impairment rating after MMI.
The E/C paid Claimant 104 consecutive weeks of temporary total disability (TTD) benefits, until January 18, 2009, when entitlement to such benefits terminated by statute. At that point, the E/C began paying Claimant impairment benefits. Claimant thereafter filed a petition for benefits seeking an award of PTD benefits from January 18, 2009, and continuing, because he remains in a total disability status per Dr. Hakim. The E/C denied the claim, asserting that Claimant must first reach MMI to make the issue of PTD ripe for adjudication because the Workers’ Compensation Law does not authorize the payment of pre-MMI “temporary PTD benefits.”
In the order on appeal, the JCC acknowledged that “case law holds that there is no creature in the workers^] compensation law known as ‘temporary permanent total disability,’ ” but the JCC nevertheless awarded Claimant PTD benefits based on his view that “the Legislature did not intend to leave a claimant such as Mr. Had-ley out in the cold with no basis for indemnity benefits when that worker is totally disabled for more than 104 weeks.” The JCC explained his decision as follows:
The indefiniteness in the medical testimony as to when he may reach physical MMI, what final degree of permanent impairment he may suffer, and when or if he may return to gainful employment leave[s] too much to chance. The concrete evidence before me is that the claimant has a permanent disability and is incapable of engaging in employment at the present time. I choose to take the words “permanent” and “total” out of the context of the medical testimony and the legal requirements to find that the claimant is currently “permanent total” and is entitled to indemnity benefits in that classification, plus the supplemental benefits attendant thereto. While there may be a change in condition in the future, the claimant presently meets the requirements of the law to establish entitlement to permanent total disability indemnity benefits.
This timely appeal followed.
II. ANALYSIS
JCCs are bound by the decisions of this court interpreting the Workers’ Compensation Law unless and until the decision is overruled by the Florida Supreme Court or this court recedes from the decision en banc. See Pardo v. State, 596 So.2d 665, 666 (Fla.1992); Hoffman v. Jones, 280 So.2d 431, 433-34 (Fla.1973). Accordingly, a JCC lacks the authority to craft and apply a rule of law that directly contravenes this court’s settled precedent. That, however, is precisely what the JCC did in this case by awarding PTD benefits based on Claimant’s present disability status, rather than his status after reaching MMI as required by the statutes and case law discussed below. This was error.[2]
*624 Section 440.15, Florida Statutes, governs the payment of disability benefits to injured employees. Pertinent to this case, subsection (1) of the statute provides for the payment of PTD benefits to employees who have a “total disability adjudged to be permanent,” and subsection (2) provides for the payment of TTD benefits to employees whose disability is “total in character but temporary in quality.” § 440.15(1)-(2), Fla. Stat. (2006)[3] (emphasis added). PTD benefits are expressly limited to “claimants with catastrophic injuries or claimants who are incapable of engaging in employment.” § 440.15(l)(b), Fla. Stat. (“In no other case may [PTD] be awarded.”). TTD benefits are payable for no more than 104 weeks, after which the employee’s permanent impairment[4] rating must be determined. See § 440.15(2)(a), Fla. Stat. (“Once the employee reaches the maximum number of weeks allowed, ... [TTD] benefits shall cease and the injured worker’s permanent impairment shall be determined.”); § 440.15(3)(d), Fla. Stat. (“After the employee has been certified by a doctor as having reached [MMI] or 6 weeks before the expiration of temporary benefits, whichever occurs earlier, the certifying doctor shall evaluate the condition of the employee and assign an impairment rating....”). The permanent impairment rating is used to pay “impairment income benefits,” commencing on “the day after the employee reaches [MMI] or after the expiration of temporary benefits, whichever occurs earlier,” and continuing for a period determined by the employee’s percentage of impairment. See § 440.15(3)(g), Fla. Stat.
The statutory scheme in section 440.15 works seamlessly when the injured employee reaches MMI prior to the expiration of the 104 weeks of temporary disability benefits. But where, as here, the employee is not at MMI at the expiration of the 104 weeks, there is the potential for a “gap” in disability benefits because TTD benefits cease by operation of law after 104 weeks and entitlement to PTD benefits is generally not ripe until the employee reaches MMI. We recognized this “gap” in Oswald and attempted to ameliorate its impact as much as possible within the confines of the applicable statutory language.
Oswald reversed a final order awarding PTD benefits to an employee who was not yet at MMI and who failed to prove that he would be totally disabled upon reaching MMI. See 710 So.2d at 96. We began the opinion by noting that “[t]he predicate for total disability benefits is catastrophic injury, which by definition entails permanent impairment.” Id. Then, after recognizing the “venerable rule” that a claim for PTD benefits is premature if the injured employee has not yet reached MMI, id. at 97, we concluded that the 1994 amendments to chapter 440 “have given rise to a narrow but necessary exception” to this rule allowing an employee whose 104 weeks of temporary benefits are about to expire to es *625 tablish entitlement to PTD benefits by-proving that he or she will be permanently and totally disabled after MMI. Id. at 97-98 (referring to statutory requirement now codified in section 440.15(3)(d) that the employee’s permanent impairment rating be assigned six weeks prior to expiration of temporary benefits). We held that, under this exception, “to be eligible for [PTD] benefits, an employee whose temporary benefits have run out — or are expected to do so imminently — must be able to show not only total disability upon the cessation of temporary benefits but also that total disability will be ‘existing after the date of [MMI].’ ” Id. at 98 (quoting definition of “permanent impairment” in section 440.02(19), Florida Statutes (1994 Supp.), which is now codified in section 440.02(22)).
Oswald squarely rejected the interpretation adopted by the JCC in this case and advocated by the dissent, ie., that a claimant’s entitlement to PTD benefits should be based on his or her condition at the end of the eligibility period for temporary benefits, rather than his or her condition at MMI. On this issue, Judge Padovano’s concurring opinion in Oswald, succinctly explained:
The remaining question is whether section 440.15(3)(a)4. [now section 440.15(3)(d) ] requires an evaluation of the impairment at the time of the medical examination (during the six-week period before the temporary benefits expire), or at the time the employee will subsequently reach [MMI]. As the court explains, the answer to this question is that the doctor must evaluate the injured employee to determine the prospective level of impairment when the employee is at [MMI]. The opinion will be subjective, but no more so than other kinds of projections we ask medical experts to make. In any event, the evaluation must be made prospectively to preserve the distinction between temporary and permanent benefits.
If we were to construe section 440.15(3)(a)4. [now section 440.15(3)(d) ] to mean that the doctor must determine the degree of impairment at the time of the medical examination, we would then subvert the two-year limit in section 440.15(2)(a) for the payment of temporary benefits. An injured worker may have a high impairment rating at the time of the examination, and yet have a low impairment rating subsequently, at the time of [MMI]. Arguably, one solution would be to award [PTD] benefits based on the current degree of impairment and then revisit the employee’s eligibility under section 440.15(l)(d) when the employee reaches [MMI]. The weakness in this approach is that it treats what may be a temporary disability as permanent and extends the payment of benefits beyond the two-year limit.
Id. at 101 (Padovano, J., concurring). This reasoning is as logical and persuasive today as it was 13 years ago.
We have consistently applied the rule of law announced in Oswald over the past 13 years,[5] most recently in East v. CVS Phar *626 macy, Inc., 51 So.3d 516 (Fla. 1st DCA 2010), and Crum v. Richmond, 46 So.3d 633 (Fla. 1st DCA 2010). In Crum, we reaffirmed that:
The test ... for PTD entitlement prior to the date of MMI is not, as the JCC appears to have concluded, whether a claimant is totally disabled upon the expiration of temporary disability benefit eligibility, and will have a permanent impairment after reaching MMI. The test is whether a claimant is totally disabled upon the expiration of temporary benefit eligibility, and will remain totally disabled after the date of MMI as that phrase is statutorily defined.
46 So.3d at 636. Accord East, 51 So.3d at 517 (“A claimant seeking PTD benefits before she reaches overall MMI must prove she has a present total disability and that said disability will exist after the date of MMI.”). The Legislature has not amended the applicable statutes in response to Oswald and its progeny, and we see no reason to recede from this settled precedent at this point, notwithstanding the policy issues raised by the JCC and the dissent.
As we stated in Crum, we recognize that the applicable statutes “may create a gap in disability benefits for those injured workers who are totally disabled upon the expiration of temporary disability benefits but fail to prove prospectively that total disability will exist after the date of MMI.” 46 So.3d at 637 n. 3. We are not persuaded, however, that the statutes are susceptible to the interpretation advocated by the dissent[6] and we do not have the authority to rewrite the statutes to eliminate the potential “gap” in disability benefits; that remedy lies with the Legislature, not the courts. Id.; see also Thompson v. Fla. Indus. Comm’n, 224 So.2d 286, 287 (Fla.1969) (denying petition for writ of certiora-ri and explaining carrier was justified in ceasing payment of TTD benefits after 350 weeks, even though claimant had not reached MMI and was still totally disabled: “This statute is clear and unambiguous in its language. The Florida Workmen’s Compensation Act is inadequate in failing to provide for a situation such as this. However, the remedy lies with the Legislature and not with ... the Court.”).
In this ease, Claimant is not yet at MMI and he failed to establish that he will be permanently and totally disabled once he reaches MMI. Indeed, his treating physician testified that Claimant will likely be able to return to at least light-duty work after the required additional surgeries are *627 completed. Accordingly, based on Oswald and its progeny, Claimant failed to prove his entitlement to PTD benefits and the JCC should have denied the claim for such benefits.
III. CONCLUSION
In sum, for the reasons stated above, the JCC erred in awarding PTD benefits to Claimant. Accordingly, we reverse the final order.
REVERSED.
BENTON, C.J., WOLF, LEWIS, HAWKES, THOMAS, ROBERTS, ROWE, and RAY, JJ., concur.
PADOVANO, J., dissents in an opinion with which DAVIS, VAN NORTWICK, CLARK, MARSTILLER, and SWANSON, JJ., concur.
VAN NORTWICK, J., dissents in an opinion with which DAVIS, CLARK, and SWANSON, JJ., concur.

. We considered this case en banc pursuant to section 6.3 of the court's Internal Operating Procedures which requires an en banc vote "[w]hen the majority of a panel decides to recede from a prior opinion of this court.”

. The issue presented in this appeal is one of statutory interpretation and the application of *624 the proper rule of law. Thus, our standard of review is de novo. See, e.g., Lombardi v. S. Wine & Spirits, 890 So.2d 1128, 1129 (Fla. 1st DCA 2004); Gilbreth v. Genesis Eldercare, 821 So.2d 1226, 1228 (Fla. 1st DCA 2002).

. All statutory references are to the 2006 version of the Workers' Compensation Law in effect at the time of Claimant's accident. See Southern Bakeries v. Cooper, 659 So.2d 339, 340 (Fla. 1st DCA 1995).

. "Permanent impairment" is defined as "any anatomic or functional abnormality or loss determined as a percentage of the body as whole, existing after the date of maximum medical improvement, which results from an injury.” § 440.02(22), Fla. Stat. (emphasis added).

. See, e.g., Fla. Transp.1982, Inc. v. Quintana, 1 So.3d 388 (Fla. 1st DCA 2009); Olmo v. Rehabcare Stamted/SRS, 930 So.2d at 789 (Fla. 1st DCA 2006); Rivendell of Ft. Walton v. Petway, 833 So.2d 292 (Fla. 1st DCA 2002); Metro. Title & Guar. Co. v. Muniz, 806 So.2d 637 (Fla. 1st DCA 2002); McDevitt St. Bovis v. Rogers, 770 So.2d 180 (Fla. 1st DCA 2000); Chan's Surfside Saloon v. Provost, 764 So.2d 700 (Fla. 1st DCA 2000); Daws Mfg. Co. v. Ostoyic, 756 So.2d 175 (Fla. 1st DCA 2000); Office Depot, Inc. v. Sweikata, 737 So.2d 1189 (Fla. 1st DCA 1999); Perdue Farms v. Sheets, 718 So.2d 361 (Fla. 1st DCA 1998); Advanced Employment Concepts v. Resmondo, 718 So.2d 215 (Fla. 1st DCA 1998); Interim Pers. v. Hollis, 715 So.2d 355 (Fla. 1st DCA 1998).

. The statutory interpretation advocated by the dissent would eliminate the "gap” by equating the expiration of the eligibility for temporary benefits with the date of MMI, as that phrase is used in the definition of "permanent impairment.” The main problem with this interpretation is that "date of maximum medical improvement” is statutorily-defined as the date after which the employee is not reasonably anticipated to have further medical recovery or improvement from the injury, see § 440.02(10), Fla. Stat., whereas the date temporary benefits cease by operation of law has nothing to do with the employee’s ultimate medical condition or prognosis. Additionally, the dissent's interpretation would have the effect of authorizing a class of pre-MMI disability benefits — whether characterized as "temporary PTD” or "continuing/extended TTD” — that are not authorized by statute and that have been previously disavowed by this court. See Quintana, 1 So.3d at 390-91 (reversing pre-MMI award of " 'temporary' PTD benefits” and distinguishing cases authorizing "temporary” award of PTD benefits based on the claimant’s post-MMI status); and cf. Oswald, 710 So.2d at 101 (Padovano, J., concurring) (explaining that pre-MMI award of PTD benefits based on the claimant's condition at the expiration of the 2-year period for temporary benefits would subvert the statutory limit on temporary benefits).