PADOVANO, J.
This case is before the full court on motions by the State of Florida and the City of St. Petersburg for rehearing en banc. For the reasons that follow, we grant the motions, withdraw the panel opinion in Westphal v. City of St. Peters-burg/City of St. Petersburg Risk Management and State of Florida, 2013 WL 718653 (Fla. 1st DCA Feb. 28, 2013), and recede from our previous en banc opinion in Matrix Employee Leasing, Inc. v. Hadley, 78 So.3d 621 (Fla. 1st DCA 2011).
We hold that a worker who is totally disabled as a result of a workplace accident and remains totally disabled by the end of his or her eligibility for temporary total disability benefits is deemed to be at maximum medical improvement by operation of law and is therefore eligible to assert a claim for permanent and total disability benefits. This conclusion is supported by the text of the Workers’ Compensation Law, as we shall explain, and it eliminates the possibility that disabled workers, like the claimant in this case, will fall into an indefinite gap in which they would not be entitled to apply for disability benefits. In light of our decision in this case, we find it unnecessary to consider the claimant’s argument that the statute, as we previously construed it in Hadley, is unconstitutional as a denial of the right of access to the courts.
A brief statement of the history of the issue is needed to properly explain our decision. This court first addressed the potential problems created by the 104-week time limit on temporary disability benefits in City of Pensacola Firefighters v. Oswald, 710 So.2d 95, 98 (Fla. 1st DCA 1998). The claimant in that case was nearing the end of his eligibility for temporary benefits but he had not reached maximum medical improvement. We held that “an employee whose temporary benefits have run out — or are expected to do so imminently — must be able to show not only total disability upon the cessation of temporary benefits but also that total disability will ‘be existing after the date of maximum medical improvement.’ ” Oswald, 710 So.2d at 98. (quoting § 440.02(19), Fla. Stat. (Supp.1994)). The underlying principle was described in the opinion as a “narrow but necessary exception” to the longstanding rule that permanent total disability benefits are not awardable before the claimant has reached maximum medical improvement. Oswald, 710 So.2d at 96-98. Because the claimant in Oswald was not able to show that he would be totally disabled after he reached maximum medical improvement, we held that he was not yet entitled to assert his claim.
The court adhered to the rule in Oswald in a number of panel decisions and in the en banc decision in Matrix Leasing, Inc. v. Hadley. The court in Hadley acknowledged that the applicable statutes may create a gap in disability benefits for those injured workers who are totally disabled on the expiration of temporary disability benefits but fail to prove prospectively that total disability will exist after the date of maximum medical improvement. Nevertheless, the court concluded that it could not interpret the statute to avoid the gap. Mr. Hadley had exhausted his 104 weeks of temporary total disability benefits but *443 he needed to undergo several additional surgical procedures and he was not yet at maximum medical improvement. Applying the rule in Oswald, the court concluded that he was not entitled to apply for permanent total disability benefits until such time as he could offer medical proof that he was at maximum medical improvement or that he would be totally disabled once he reached maximum medical improvement.
Based on the rule in Hadley, the judge of compensation claims in this case denied a claim for permanent and total disability benefits. Mr. Westphal, a firefighter, felt a sharp pain in his back as he was moving heavy furniture while fighting a fire. By the time he returned to the fire station, he reported extreme pain and a loss of feeling in his left leg from the knee down. The city accepted the compensability of his low back and left knee injuries and provided both indemnity and medical benefits.
Mr. Westphal sought and obtained temporary total disability benefits for a period of 104 weeks but he was still totally disabled at the time those benefits expired. He filed a petition seeking compensation in the form of permanent and total disability benefits, and the judge of compensation claims considered the petition in a hearing and denied it.
The judge rejected the testimony of an independent medical examiner, Dr. Victor Hayes, M.D., to the effect that Mr. West-phal would be totally disabled at the time he reached maximum medical improvement and relied instead on the testimony of Mr. Westphal’s treating physician, Dr. David McKalip, M.D. As a part of his treatment, Dr. McKalip performed two surgical procedures on Mr. Westphal’s back. He testified that Mr. Westphal was still recovering from the second surgery and that it was too soon to render an opinion as to the nature and extent of any permanent work restrictions he might impose once Mr. Westphal reached maximum medical improvement from the surgery.
The final order denying the petition explains why the judge accepted the testimony of Mr. Westphal’s treating physician over the contrary testimony offered by the independent medical examiner. The judge stated in the order, “While claimant urges reliance on the opinion of his independent medical examiner, Dr. Hayes, I choose to rely on the testimony of Dr. McKalip, the orthopedic surgeon who recently performed surgery on April 11, 2012, as being in the best position to determine whether or not the claimant has reached physical maximum medical improvement.”
The judge also rejected Mr. Westphal’s argument that he would still be' totally disabled after eventually attaining maximum medical improvement. On this point, the judge made the following finding: “Based on Dr. McKalip’s testimony, and the en banc decision from the First District Court of Appeal in Matrix Employee Leasing v. Hadley, 78 So.3d 621 (Fla. 1st DCA 2011), I find that the claimant has not reached [MMI] from a physical standpoint and it is too speculative to determine whether he will remain totally disabled after the date of [MMI] has been reached from a physical standpoint.” (emphasis added.) Because Mr. Westphal had not proven that he would be totally disabled when he reached maximum medical improvement, the judge denied the claim for permanent and total disability benefits.
Mr. Westphal then appealed to this court. He argues that the 104-week limit on temporary total disability benefits results in a denial of the constitutional right of access to courts for those workers who remain totally disabled but are still improving when their temporary benefits expire. This is the issue that ultimately prompted the court to hear the case en *444 banc. However, we need not address the constitutional validity of the statutory limitation on temporary disability benefits, because the controversy is one that can be resolved on another ground.
We now conclude that we interpreted the Workers’ Compensation Law incorrectly in Hadley and that we should recede from the rule we adopted in that case. Nothing in the text of the applicable statutory provisions suggests that the Legislature intended to create a gap in which some totally disabled workers will be ineligible to apply for disability benefits. Moreover, the notion that there can be a period of time during which a disabled worker is not entitled to be compensated for his or her workplace injury is contrary to the basic purpose of the Workers’ Compensation Law.
Section 440.15(2)(a) of the Workers’ Compensation Law provides that a disabled worker is eligible for temporary total disability benefits for a maximum of 104 weeks but it does not suggest that a disabled worker who has reached that limit is no longer entitled to any further disability benefits. Nor does the statute state or imply that a disabled but still improving worker must prove that the disability will continue to exist at some unspecified point in the future when a doctor is willing to say that the worker will have reached maximum medical improvement.
In construing a statute, we must first consider the plain meaning of the text. See Holly v. Avid, 450 So.2d 217 (Fla.1984); Fla. Dep’t of Envt’l Protection v. ContractPoint Florida Parks, LLC, 986 So.2d 1260 (Fla.2008); Fast Tract Framing, Inc. v. Caraballo, 994 So.2d 355 (Fla. 1st DCA 2008). If the statute conveys a “clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.” GTC, Inc. v. Edgar, 967 So.2d 781, 785 (Fla.2007) (quoting A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 137 So. 157, 159 (1931)).
By the plain language of section 440.15(2)(a), an injured worker who is still totally disabled at the end of his or her eligibility for temporary disability benefits is deemed to be at maximum medical improvement as a matter of law, even if the worker may get well enough someday to return to work. In these circumstances, the claimant need not present medical proof that he or she has reached maximum medical improvement. The worker may immediately assert a claim for permanent total disability benefits, and the judge may award those benefits if the worker has proven that he or she is in fact totally disabled.
Section 440.15(2)(a) of the Workers’ Compensation Law provides that an injured worker who is totally disabled is eligible for temporary total disability benefits for a period of time not to exceed 104 weeks. The disabled worker must be evaluated by a doctor six weeks before the expiration of the 104-week period of eligibility, and the doctor must assign an impairment rating. The evaluation is required by section 440.15(3)(d), which states:
After the employee has been certified by a doctor as having reached maximum medical improvement or 6 weeks before the expiration of temporary benefits, whichever occurs earlier, the certifying doctor shall evaluate the condition of the employee and assign an impairment rating, using the impairment schedule referred to in paragraph (b).
§ 440.15(3)(d), Fla. Stat. (2009) (emphasis added). The use of the word “shall” in this subsection makes mandatory both the duty to evaluate the worker and the duty *445 to assign an impairment rating. If the injured worker is receiving temporary total disability benefits but has not yet reached maximum medical improvement, the evaluation must be completed and the impairment rating must be assigned.
Section 440.15(3)(d) employs the term “impairment rating,” but this is merely a shorthand reference to a “permanent impairment rating.” This paragraph is contained within section 440.15(3), which deals exclusively with compensation for permanent impairments. Moreover, when this statute is read in conjunction with other statutes to which it relates, the term “impairment rating” can only mean a “permanent impairment rating.” Section 440.15(2)(a), the subsection that sets the 104-week limit on eligibility for temporary total disability benefits, states in material part:
Once the employee reaches the maximum number of weeks allowed, or the employee reaches the date of maximum medical improvement, whichever occurs earlier, temporary disability benefits shall cease and the injured worker’s permanent impairment shall be determined.
§ 440.15(2)(a), Fla. Stat. (emphasis added).
The use of the term “permanent impairment” signifies that the disabled worker has attained maximum medical improvement. Section 440.02(22), Florida Statutes (2009), defines “permanent impairment” as “any anatomic or functional abnormality or loss determined as a percentage of the body as a whole, existing after the date of maximum medical improvement, which results from the injury” (emphasis added). It follows that the permanent impairment rating required by section 440.15(3)(d) is the legal equivalent of a medical finding that the disabled worker has reached maximum medical improvement.
This conclusion is supported by two more detailed provisions, subsections 440.15(3)(d)l. and 2., pertaining to the nature and content of the report the doctor is required to make six weeks before the expiration of temporary disability benefits. These paragraphs provide:
1. Thé certifying doctor shall issue a written report to the employee and the carrier certifying that maximum medical improvement has been reached, stating the impairment rating to the body as a whole, and providing any other information required by the department by rule. The carrier shall establish an overall maximum medical improvement date and permanent impairment rating, based upon all such reports.
2. Within 14 days after the carrier’s knowledge of each maximum medical improvement date and impairment rating to the body as a whole upon which the carrier is paying benefits, the carrier shall report such maximum medical improvement date and, when determined, the overall maximum medical improvement date and associated impairment rating to the department in a format as set forth in department rule. If the employee has not been certified as having reached maximum medical improvement before the expiration of 98 weeks after the date temporary disability benefits begin to accrue, the carrier shall notify the treating doctor of the requirements of this section.
§ 440.15(3)(d), Fla. Stat. (2009). In these two paragraphs of the statute, the Legislature is plainly equating a medical finding of maximum medical improvement with the status that exists by law if the employee has not reached maximum medical improvement six weeks before the expiration of temporary benefits.
When all of these statutes are read together, as they should be, it is clear that *446 an injured worker who is still totally disabled at the end of the period of eligibility for temporary total disability benefits is deemed to be at maximum medical improvement, regardless of any potential for improvement. The doctor is required by section 440.15(3)(d) to assess and certify the injured worker’s “permanent impairment,” a term that can have but one meaning under section 440.02(22): a condition existing “after the date of maximum medical improvement.” It follows that the permanent impairment rating that must be given at that time is the legal equivalent of a medical finding that the worker has reached maximum medical improvement.
This interpretation of the Workers’ Compensation Law does not extend temporary benefits beyond the statutory limit; it merely enables a disabled worker to assert a claim for permanent disability benefits without an artificial and unnecessary delay in the process. While it is true that the Legislature placed a fixed time limit on the right to recover temporary disability benefits, the purpose of this time limit was not to create a gap in which a totally disabled but still improving worker will be uncompensated. To the contrary, it is clear from the overall statutory scheme that the time limit was designed as a deadline on the issue of maximum medical improvement.[1]
The conclusion that disability benefits are available throughout the course of a worker’s disability is not only supported by the text of the applicable statutes, it is also consistent with the intent of the Legislature as expressed in the Workers’ Compensation Law. Section 440.015, Florida Statutes (2009), states, “It is the intent of the Legislature to ensure the prompt delivery of benefits to the injured worker.” We can infer from this statement that the Legislature meant to require the continuous payment of disability benefits for an injured worker who continues to be disabled and that the 104-week limit on temporary disability benefits does not effectively terminate the injured worker’s right to just compensation.
It is unreasonable to assume that the Legislature meant to create a gap in benefits, during which a disabled worker is not compensated for a disability, even though there is no dispute that the worker is totally disabled. If that were the case, a disabled worker who has exhausted the 104 weeks of temporary benefits, but who has still not fully recovered from the workplace injury, might have to wait months— or perhaps years — before disability benefits would resume, even though the employee remains totally disabled all the while.
The existence of a gap in benefits would also promote a disparity in the way that disabled workers are treated. A disabled worker who reaches maximum medical improvement relatively quickly is fully compensated. But a disabled worker who is told that he or she may be well enough to return to work someday may have no compensation at all beyond the initial 104-week period. We do not believe that the Legislature intended to create such a disparity. It is reasonable to conclude that the Legislature meant to ensure the *447 “prompt delivery of benefits” to all workers who are injured on the job, not just some of them. See, e.g., Gauthier v. Fla. Int’l Univ., 38 So.3d 221, 224 (Fla. 1st DCA 2010).
Our conclusion that a disabled worker is entitled to receive disability benefits continuously throughout the course of his or her disability is also consistent with the overall statutory scheme. Section 440.15(l)(d) authorizes an employer to discontinue the payment of disability benefits to a worker who has regained earning capacity through rehabilitation. Thus, the status of maximum medical improvement is not truly permanent. When an employee is deemed to be at maximum medical improvement by operation of law, the employer is not stuck with that determination forever. The worker’s status and eligibility for benefits can change with the circumstances.
On the other hand, an interpretation that would create a potential gap in disability benefits could result in an uncorrectable error. If the claim is denied because the disabled worker may still improve and it turns out later that he or she does not improve, the logical inference would be that the worker had, in fact, reached maximum medical improvement earlier. Yet there is nothing in the law that would enable the worker to recover the disability benefits he or she should have been receiving in the meantime. It is reasonable to conclude that, if the Legislature had intended to create a gap in the payment of disability benefits, it would have at least provided a remedy for the recovery of lost benefits if it could be shown later that the claimant was actually at maximum medical improvement all along and should have been receiving those benefits.
We acknowledge that Mr. Westphal has not asked us to recede from our opinion in Hadley, but that is not necessary under the circumstances. The argument made in the initial brief was that the statute violates the constitutional right of access to courts. This argument necessarily refers to the validity of the statute as we interpreted it in Hadley.
We also acknowledge that a court should be very reluctant to recede from one of its own decisions. See Arizona v. Rumsey, 467 U.S. 203, 212, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984) (stating that a Court should not depart from precedent in the absence of a special justification). The doctrine of stare decisis is of vital importance in the work of an appellate court. Fidelity to precedent is said to be the preferred course of action because it “promotes the evenhanded, predictable, and consistent development of legal principles” and because it “contributes to the actual and perceived integrity of the judicial process.” Payne v. Tennessee, 501 U.S. 808, 828, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991).
However, the doctrine of stare decisis should not be applied reflexively as a method of protecting a precedent, if the result would be to perpetuate an injustice. Although fidelity to precedent is the first choice, an appellate court must be willing to consider the correctness of its prior work and, above all, willing to admit that it has made a mistake. As Chief Justice Roberts observed, the doctrine of stare decisis is neither an “inexorable command,” nor a “mechanical formula of adherence to the latest decision.” Citizens United v. Federal Election Com’n, 558 U.S. 310, 377, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010) (quotations omitted).
In the present case, there are two compelling reasons to reconsider the precedent we set in Hadley. The first of these reasons is that we have never before been *448 confronted with a constitutional challenge to the statutes in question. Such a question was not presented in Hadley or in any other previous case presented to the court. It is safe to say that the prospect of declaring the statute unconstitutional put the issue in an entirely new light.
The second reason is that the principle established in Oswald has not worked out the way we thought it would. It is clear to us now that the exception the court was attempting to create to ensure the continuous flow of disability benefits for those who are truly disabled is very rarely applied. Instead, the rule in Oswald is now used almost exclusively as authority to deny benefits.[2] The Workers’ Compensation Law was designed to provide injured workers just compensation for their injuries at reasonable cost to their employers. See § 440.015, Fla. Stat. Yet, by this court’s interpretation of the law in Oswald and Hadley, it has become an impediment to the recovery of just compensation for a distinct class of severely injured workers. As Judge Van Nortwick observed in his dissent in Hadley, the “patch” created in Oswald “leaves many disabled claimants stuck in [the] gap.” Hadley, 78 So.3d at 634 (Van Nortwick J., dissenting).
For these reasons, we hold that Mr. Westphal’s claim for permanent and total disability benefits is not premature. If he can prove that he is totally disabled, he is entitled to receive his benefits now and he need not wait until such time in the future as he can offer medical proof that he has reached the point of maximum medical improvement. We certify this case for review by the Supreme Court under Article V, section 3(b)(4) of the Florida Constitution on the ground that our decision passes on the following question of great public importance:
Is a worker who is totally disabled as a result of a workplace accident, but still improving from a medical standpoint at the time temporary total disability benefits expire, deemed to be at maximum medical improvement by operation of law and therefore eligible to assert a claim for permanent and total disability benefits?
The order of the judge of compensation claims is reversed and the case is remanded for consideration of the claim for permanent and total disability benefits.
Reversed.
LEWIS, C. J., and WOLF, VAN NORTWICK, CLARK, MARSTILLER, SWANSON, and MAKAR, JJ., concur.
WOLF, J., concurs in an opinion in which LEWIS, C.J., joins.
*449 BENTON, J., concurs in result in an opinion in which RAY, J., joins.
THOMAS, J., concurs in result only and dissents in part.
WETHERELL, J., dissents in an opinion in which ROBERTS and ROWE, JJ., join.
OSTERHAUS, J., recused.

. The two-year limit on temporary disability benefits was enacted as a part of the Workers’ Compensation Law in 1993. See § 440.15(2)(a), Fla. Stat. (Supp.1994). Before that, the time limit on temporary disability benefits was five years. See § 440.15(2)(a), Fla. Stat. (1993). We acknowledge the decision by the Florida Supreme Court in Thompson v. Florida Industrial Relations Commission, 224 So.2d 286 (Fla.1969), but we conclude that it is not controlling here. The 1961 statute the court was interpreting in Thompson had no provision for the assignment of a permanent impairment rating prior to the expiration of temporary benefits.

. See, e.g., McDevitt Street Bovis v. Rogers, 770 So.2d 180 (Fla. 1st DCA 2000) (denying a disabled worker disability benefits after the expiration of the 104-week period because she failed to prove that she would still be totally disabled at the time she reached maximum medical improvement); Chan’s Surfside Saloon v. Provost, 764 So.2d 700 (Fla. 1st DCA 2000) (denying a disabled worker disability benefits because she failed to prove that she would still be disabled at the time she reached maximum medical improvement); Metropolitan Title & Guar. Co. v. Muniz, 806 So.2d 637 (Fla. 1st DCA 2002) (concluding that a disabled worker would be entitled to apply for disability benefits after the 104-week period only if he could prove that he would still be disabled at the "future date” of his maximum medical improvement); Rivendell of Ft. Walton v. Petway, 833 So.2d 292 (Fla. 1st DCA 2002) (denying a disabled worker disability benefits because she was still improving and not yet at maximum medical improvement at the end of the 104-week period); Crum v. Richmond, 46 So.3d 633 (Fla. 1st DCA 2010) (denying disability benefits one day after the expiration of temporary benefits because the disabled worker was still improving and had not yet reached maximum medical improvement).