WOLF, J.,
concurring and dissenting with opinion.
I concur in that portion of the majority opinion that determines that this particular inmate is not entitled to relief. I also concur in the decision to declare conflict with the Fifth District Court of Appeal’s decision in Holland v. State, 791 So.2d 1256 (Fla. 5th DCA 2001). I would additionally certify a question of great public importance concerning the appropriate method and scope of judicial review of decisions to segregate prisoners from the general population. I respectfully dissent from the decision to overturn almost 35 years of precedent which allowed inmates to file habeas corpus proceedings in the state circuit courts to challenge their assignments to close management.
The majority opinion states that we should adopt the reasoning of Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), and holds that an inmate has no liberty interest concerning the Florida Department of Corrections’ (Department) decision to place him or her in close management. The majority therefore determines that habeas corpus review is no longer available.
*1171 Under our existing precedent, this holding denies the prisoner any meaningful judicial review of the decision to be placed in close management, no matter the duration. As explained later in this opinion, the decision by federal courts and the federal government, which have no custodial responsibility for these inmates, to limit their oversight of prison management should not affect the review process at the state level. If anything, the limited oversight adopted by the federal courts makes it more essential to maintain reasonable review of decisions made by the party having primary custodial responsibility of our prisoners, the Department. Inmates segregated from the general prison population for a potentially significant period of time should continue to have the same reasonable court oversight concerning their segregation from .the general prison population that they have had since 1982. Insignificant justification has been provided to overturn our precedent and to effectively extinguish this important safeguard.

Facts

The majority has accurately described the procedural posture and underlying facts in support of petitioner’s placement in close management status. Thus, there is no need to repeat the work of the majority.
For purposes of this opinion, however, it is necessary to clarify petitioner’s status and the implications concerning his placement.
Close management is “confinement of an inmate apart from the general population.” Fla. Admin. Code R. 33-601.800(l)(d). The Department placed petitioner in the Close Management I(CMI) category, the most restrictive single-cell housing level of the close management classifications. Fla. Admin. Code R. 33-601-800(l)(e). The record does not show how long petitioner will be held in close management, presumably until the Department feels such segregation from, the general population is no longer necessary. See Fla. Admin. Code R. 33-601.800(16)(a). While risk assessments are.done periodically, formal review only takes place after 180 days (six months) of placement in close management and every 180 days thereafter. Fla. Admin. Code R. 33-6601.800(16)(e). There is no guarantee that an inmate will be released at the time of any formal review; therefore, the duration of the segregation is indefinite and may be for extended periods of time.
While a review of Florida Administrative Code Rule 33-601.800 demonstrates that close management is not the solitary confinement as depicted in movies like “Murder in the First” (Warner Bros.1995) or “The Shawshank Redemption” (Castle Rock Entertainment 1994), it still involves segregation from the general population and significant restrictions on items associated with human dignity which may have serious implications regarding a prisoner’s wellbeing.[2] See Grant Henderson, Disci *1172 plinary Segregation; How the Punitive Solitary Confinement Policy in Federal Prisons Violates the Due Process Clause of the Fifth Amendment in Spite of San-din v. Conner, 99 Marq. L. Rev. 477 (Winter 2015). It is particularly significant that inmates who are placed in close management are subject to having any of their privileges suspended or’revoked with very limited review. See Fla. Admin. Code R. 33-601.800(12).
Indeed, ‘ the courts of this state have consistently held that these substantial and significant deprivations for potentially lengthy periods of time are subject to ha-beas corpus review.
' Current Status of the Lard
For almost 35. years, this court has held that an inmate is entitled to challenge the assignment to close management status by filing a petition for writ of habeas corpus in circuit court. Costello v. Strickland, 418 So.2d 443 (Fla. 1st DCA 1982).
In Kendrick v. McNeil, 6 So.3d 657 (Fla. 1st DCA 2009), we recognized the consistent availability of this remedy. The Kendrick opinion noted:
This Court has consistently held that an inmate who ' seeks release from close management back into the general prison population is entitled to proceed through a petition for writ of habeas corpus. See Ashley v. Moore, 732 So.2d 498 (Fla. 1st DCA 1999); Norris v. Dep’t of Corrections, 721 So.2d 1235 (Fla. 1st DCA 1998); Taylor v. Perrin, 654 So.2d 1019 (Fla. 1st DCA 1995); Guess v. Barton, 599 So.2d 770 (Fla. 1st DCA 1992); Roy v. Dugger, 592 So.2d 1235 (Fla. 1st DCA 1992); Thompson v. Dugger, 509 So.2d 391 (Fla. 1st DCA 1987); see also Holland v. State, 791 So.2d 1256 (Fla. 5th DCA 2001).
Id. at 658.[3]
Since Kendrick, we have continued to recognize our consistent holding that an inmate'challenging close management status may do so through habeas corpus. Magwood v. Tucker, 98 So.3d 725 (Fla. 1st DCA 2012). The right to challenge “arbitrary transfers” from the general prison population to administrative segregation is based not only on federal due process concerns, but-also rights' recognized by the State of Florida. Granger v. Fla. State Prison, 424 So.2d 937 (Fla. 1st DCA 1983). The majority and the Department urge this court to recede from our precedent because of the holding in Sandin v. Con *1173 ner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

Sandin v. Conner, 515 U.S. 472 (1995)

We should not recede from our well-reasoned precedent in light of Sandin because: 1) the holding in Sandin merely limits the right of federal courts to interfere with supervisory decisions made by state prison officials; 2) the holding in Sandin does not mandate that states no longer recognize a limited liberty interest in remaining in the general prison population; 3) this court has recognized a state liberty interest in remaining in the general prison population a number of times since Sandin was decided 21 years ago; 4) .the State has not presented sufficient justification to depart from almost 35 years of precedent; 5) Sandin addressed segregation from the general prison population for a limited period of time — here we have confinement for an unlimited duration; 6) if both federal and state oversight are extinguished, a prisoner faced with arbitrary confinement will be left with no adequate remedy; and 7) the obligation of the State to treat prisoners held in its custody fairly and humanely implores us not to do so. - ..
Sandin involved review of a federal lawsuit filed by a Hawaiian prisoner pursuant to 42 U.S.C. § 1983 to challenge his assignment to close management for 30 days. Id. at 476, 115 S.Ct. 2293. He asserted that the State of Hawaii had denied him due process guaranteed by Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).. Id. He sought injunc-tive relief, declaratory relief and damages among other items.[4] Id. The holding in Sandin was that 30 days of administrative segregation did not involve such an atypical and significant deprivation to create a federal liberty interest to justify federal intervention into the oversight of inmates by the- state. It further stated that state rules providing, inmates protection from abuses would not create such a right. Id. at 487, 115 S.Ct. 2293.
Sandin. did not mandate that the state limit its .own oversight of officials that place prisoners in administrative segregation, nor did it mandate that the state, the entity responsible for .the. health, safety, and humane, treatment of human beings held in its custody, no longer provide meaningful judicial review. Sandin did not hold that the state may not recognize a limited liberty interest in close management decisions. Indeed, both the Florida Supreme Court and the United States Supreme Court have recognized that “ ‘state courts are absolutely free to interpret state constitutional provisions to accord .greater protection to individual rights than do similar provisions of the United States Constitution.’ ” Rigterink v. State, 66 So.3d 866, 888 (Fla.2011) (quoting Arizona v. Evans, 514 U.S. 1, 8, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995)). See also State v. Horwitz, 191 So.3d 429, 438 (Fla.2016) (“[T]he United States-Constitution generally sets the ‘floor’ — not the ‘ceiling’ — of personal rights and freedoms that must be afforded to a defendant by Florida law.”). Once the federal system effectively withdrew from any oversight of prison officials responsible for the classification and living conditions of inmates, it became even more essential for the state court system to maintain meaningful review.'
Indeed, even the federal courts might not refrain from oversight of potentially indefinite durations of administrative segregation. See Wilkinson v. Austin, 545 *1174 U.S. 209, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005). In Wilkinson, the United States Supreme Court held that there were limited federal due process rights for inmates placed in “supermax” facilities where placement was for an indefinite period. While the conditions faced by the prisoners in Wilkinson were far more onerous than the ones outlined in our rules regarding close management, the court was alsb concerned with the indefinite period of segregation that was limited only by the length of an inmate’s sentence.[5] Ohio, like Florida, had limited formal review of the duration of the segregation.
The federal courts, which do not have primary responsibility for an inmate’s safety and wellbeing, have stated that they will not get involved unless an inmate’s deprivation is atypical and substantial. See Sandin, 515 U.S. 472, 115 S.Ct. 2293. State courts' with primary oversight responsibilities should not draw the same line.[6] As noted by the majority, the Eleventh Circuit has held that 3 years in close management was not an atypical and significant hardship. See Al-Amin v. Donald, 165 Fed.App’x 733, 734 (11th Cir. 2006). A standard that does hot provide meaningful review for this length of segregation is unworkable at the state level.
In fact, to this point, we have chosen not to draw the same line. In at least four cases since Sandin, this court has stated that a petition for writ of habeas corpus is still the appropriate method for challenging close management classification. See Magwood, 98 So.3d 725; Kendrick, 6 So.3d 657; Ashley, 732 So.2d 498; Norris, 721 So.2d 1235.[7]

Effect of Majority’s Holding

The majority holds that the decisions regarding a prisoner’s • placement in close management and segregation from the general prison population do not implicate a constitutionally-protected liberty interest. Therefore, the majority holds that habeas corpus review is no longer available and that any request for relief must be by petition for writ of mandamus filed in the Second Circuit for Leon County.
The effect of the majority’s holding is to deny any review of any assignment to close management for any duration because this court has long held that a prisoner must have a liberty interest in order to bring a petition for writ of mandamus challenging the Department’s actions.
In Plymel v. Moore, 770 So.2d 242, 249 (Fla. 1st DCA 2000), this court held that a prisoner was entitled to mandamus relief to require the Department to follow its own rules and provide limited due process predicated on the substantive liberty interest implicated by the prisoner’s loss of gain time. In a number of recent cases, we have held that absent a showing of such *1175 a liberty interest, a prisoner lacks even minimal due process rights, and thus is not entitled to mandamus . relief. See Williams v. Tucker, 87 So.3d 1270, 1271 (Fla. 1st DCA 2012) (affirming the denial of a petition for writ of mandamus because the prisoner, who was subjected to 60 days’ disciplinary confinement, “failed to demonstrate any liberty interest implicating the protections of the Due Process Clause”); see also Gardener v. Fla. Dep’t of Corr., 178 So.3d 92, 94 (Fla. 1st DCA 2015) (finding the circuit court applied the correct law in denying a prisoner’s petition for writ of mandamus in reliance on San-din, concluding “no liberty interest was involved” in prison disciplinary action that resulted in disciplinary confinement); Castillo v. State, Dep’t of Corr., 174 So.3d 452, 453 (Fla. 1st DCA 2015) (finding a circuit court did not depart from the essential requirements of the law in denying as “frivolous” a mandamus petition challenging a prison disciplinary proceeding that resulted in'30-days’ disciplinary confinement because the prisoner “failed to demonstrate any liberty interest' implicating the protections of the Due Process Clause”); John v. Crews, 149 So.3d 149, 151 (Fla. 1st DCA 2014) (affirming the dismissal of a petition for writ of mandamus because “the revocation of gain-time does not implicate appellant’s liberty interests in this case because appellant is serving a life sentence” and thus is “ineligible for gain-time”); Wright v. McDonough, 958 So.2d 1132, 1133 (Fla. 1st DCA 2007) (finding the circuit court properly denied a petition for writ of mandamus challenging a disciplinary proceeding which “adversely affected Petitioner’s ability to earn gain-time,” citing Wolff and Sandin).
Thus, the type of review available under existing law would cease to exist. Issues such as arbitrariness (which this court said was reviewable in Granger, 424 So.2d 937), lack of proper notice (which this court found to be reviewable in. Thompson, 509 So.2d 391), and even failures of the Department to follow its own rules (see Plymel, 770 So.2d 242) would not be reviewable by the court without demonstrating a liberty interest, which the majority finds is not implicated by close management. The majority’s suggestion that review is available by mandamus is merely a dead end due to the majority’s holding that there is no liberty interest. The majority’s suggestion that it is not creating a dead end is simply not supported by our recent case law that requires a liberty interest in order for a prisoner to obtain mandamus relief. It also creates confusion regarding the scope of mandamus review.

Insufficient Justification for Overturning Precedent

Absent a significant change in circumstances or a substantial policy reason, a court should adhere to its precedent pursuant to the doctrine of .stare decisis. Kimble v. Marvel Entm’t, LLC, — U.S. —-, -, 135 S.Ct. 2401, 2409, 192 L.Ed.2d 463 (2015).
Overruling precedent is never a small matter. Stare decisis — in English, the idea that today’s Court should stand by yesterday’s decisions — is “a foundation stone of the rule of law.” Application of that doctrine, although “not an inexorable command,” is the “preferred course because, it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.”
Id. at 2409 (citations omitted).
In refusing to overturn precedent, the United States Supreme Court went on to say that adhering to stare decisis means an allegation by itself that prior decisions *1176 are wrong provides an insufficient reason to overturn precedent.
Accordingly, an argument that we got something wrong — even a good argument to that effect — cannot by itself justify scrapping settled precedent. Of otherwise said, it is not alone sufficient that we would decide a case differently now than we did then. To reverse course, we require as well what we have termed a “special justification” — over and above the belief “that the precedent was1 wrongly decided.”
Id. (emphasis added; citations omitted).
This court acknowledged the vital importance of precedent and stare decisis in Westphal v. City of St. Petersburg, 122 So.3d 440, 447 (Fla. 1st DCA 2013), quashed on other grounds by Westphal v. City of St. Petersburg, 194 So.3d 311 (Fla.2016). We noted with approval the United States Supreme Court case of Arizona v. Rumsey, 467 U.S. 203, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984), which stated the rule of law “that a Court should not depart from precedent in the absence of a special justification.” Westphal, 122 So.3d at 447. While the court in Westphal departed from precedent, it did so based on two justifications not present in the existing case: 1) that the legal argument (unconstitutional application of the statute) had not been made in the previous cases; and 2) the prior court interpretation had spawned unexpected and unjust results. Neither is present or argued in this case. The precise argument made by the Department in this case was previously rejected in Kendrick and Magwood. Further, there is no evidence that any unexpected results have occurred as a result of this court’s precedent. A review of the case law demonstrates a system that is operating well with reasonable limited review of decisions to segregate prisoners.
The Department’s main arguments for overturning precedent are that 1) by not confining challenges to the Leon County Circuit Court, it may receive inconsistent decisions affecting its ability to supervise prisoners; and 2) the habeas standard of review may lead to the courts micromanaging the prison system. Mere speculation concerning possible inconvenience is insufficient to' justify abandoning precedent. In fact, a review of prior case law demonstrates the Department’s fears are unrealistic.
The Department has not cited one instance in 35 years in which there has been an inconsistent circuit or appellate decision which has affected its ability to manage the prison population. Our court system is designed to resolve such conflicts should they arise. Nor is there any evidence that trial judges in circuits other than the Second Circuit would not render well-thought-out decisions concerning whether the Department is following its rules or providing minimal due process in imposing administrative segregation. Departmental convenience concerning Leon County venue privileges is not a valid reason for limiting this important right of inmates.
The majority asserts that the courts should not be involved in micromanaging the Department in its difficult job of maintaining control within the prison system, and therefore, we should recede from our prior case law. No one disputes it is a difficult job to manage inmates, but the Department has failed to demonstrate that in almost 35 years of limited court oversight, the courts have interfered with the operation of the prison system. No specific instance concerning micromanagement is cited. Few, if any, decisions have resulted in the Department’s decisions being overturned. Review even by habeas corpus is limited in nature. The present ha-beas corpus review is limited and does not *1177 allow an inmate to bring an action in circuit, court until all administrative remedies have been exhausted. See Sutton v. Strickland, 485 So.2d 25 (Fla. 1st DCA 1986). The Department has a full opportunity during the administrative process to demonstrate it has met the limited due process rights afforded an inmate concerning classification decisions. See, e.g., Plymel, 770 So.2d at 249. Decisions of the Department have not been second-guessed, but court oversight has served to protect from totally arbitrary actions of the Department or substantial failure of the Department to follow its own rules. Id.
In those rare occurrences where the Department has been required to respond, it has primarily been for the Department to present record evidence that it has followed its own rules. See, e.g., Thompson, 509 So.2d 391. Again, the convenience of the Department to have cases filed in Leon County does not justify overturning our precedent.
Reasonable oversight does not violate separation of powers principles. In fact, it is the duty of the court to provide limited oversight to prevent arbitrary abuses. It cannot be reasonably argued that such abuses may not occur. The courts need to be available, even if on a limited basis, to prevent such behavior. Because the Department has failed to demonstrate that “special justification” for overturning our well-reasoned precedent, I would not do so.

. 1). Close management status affects an inmate's ability to work, which affects an inmate's ability to earn gain time. ' Close management inmates do not get credit or gain time for participating in the GED/education class because their work is all in-cell, which means their participation time is not counted. For inmates in the general population, gain time for education/vocation is based upon an inmate’s presence in the classroom and his or her participation. Inmates in the general population are automatically assigned to a job or program.
2). Close management inmates are only guaranteed a shower three times per week (see' Fla. Admin. Code R. 33-601.800(10)(e)), whereas ’ inmates in the general population can shower seven days per week.
3). Close management inmates’ visits are restricted as follows: CMI — one non-contact visit for two hours] once a month; *1172 ' CMII — one non-contact visit for two hours every two weeks; and CMIII — one contact visit every two weeks. All visits must be scheduled by appointment. See Fla. Admin. Code R. 33-601.800(ll)(b)6, (ll)(c)l, & (ll)(d)l. By comparison, inmates in the general population are allowed weekly contact visits (Saturday/Sunday) for six hours (plus the holidays).
4). CMI inmates are only allowed to make one fifteen-minute call per month; CMII inmates are only allowed to make one fifteen-minute call every two weeks; and CMIII inmates are only allowed to make one fifteen-minute call every week. See Fla. Admin. Code R. 33-601.800(1 l)(b)5, (1 l)(c)2, and (1 l)(d)3, In the general population, during weekdays phones are turned on at 12:00 p.m, and remain on until 11:00 p.m., and on weekends and holidays, phones are turned on at 8:00 a.m. and remain on until 11:00 p.m., and inmates may make as many calls as they like.
5). CMI inmates are handcuffed and shackled upon exiting their cells at all. times, whether it is for group activities, medical or dental appointments or counseling. See Fla. Admin. Code. R. 33-601.800(14)(a). •
6). Inmates who are placed in close management are also subject to having any of these privileges suspended or revoked with .very limited review. Fla. Admin. Code R. 33-601.800(12).

. See also. Magwood v. Tucker, 98 So.3d 725 (Fla. 1st DCA 2012); Granger v. Fla. State Prison, 424 So.2d 937 (Fla. 1st DCA 1983).

. The issue before us, unlike Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), simply involves court oversight of the decision to segregate a prisoner, not a prisoner’s right to seek damages.

. This case does not involve an assignment to the maximum management classification pursuant to Florida Administrative Code Rule 33-601.820. Maximum management may be more like the conditions outlined in Wilkinson v. Austin, 545 U.S. 209, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005).

. In Toward a Standard of Meaningful Review: Examining The Actual Protections Afforded To Prisoners In Long Term Solitary Confinement, 163 U. Pa. Law Rev. 1159 (Mar.2015), the author Elli Marcus does a good job demonstrating how the Sandin standard is totally inadequate in affording reasonable protections for inmates facing administrative segregation of indefinite duration.

.The Fifth District held that a petition for writ of habeas corpus was properly denied where a prisoner sought release from close management. Holland v. State, 791 So.2d 1256 (Fla. 5th DCA 2001). The Fourth District sent a case back to trial court to determine whether habeas or mandamus was available to challenge close management. Lowery v. Lambdin, 687 So.2d 55 (Fla. 4th DCA 1997).